[Civ. No. 12256. Second Appellate District, Division Two.—December 30, 1939.]

ELSON NEWELL CHURCH, a Minor, etc., Appellant, v. MARIE PAYNE et al., Respondents.

A. V. Falcone for Appellant.

C. F. Jorz for Respondents.

McCOMB, J.—From a judgment in favor of defendants after trial before a jury in an action to recover damages for personal injuries received by plaintiff when the bicycle upon which he was riding was struck by an automobile being operated by defendant Marie Payne, plaintiff appeals.

Viewing the evidence most favorable to defendants (respondents), the essential facts are:

February 4, 1938, defendant Marie Payne was operating her automobile in a southerly direction on Harvard Boulevard in the city of Los Angeles. She was traveling between 20 and 25 miles an hour about twelve feet from the west curb line' of the boulevard. Plaintiff was traveling in the same direction, about a block and a half ahead of said defendant and from two to three feet from the west curb of the boulevard. Both parties retained their respective speeds, traveling in a straight line, until said defendant was approximately 10 feet behind plaintiff, at which time he suddenly turned to his left in front of the car being operated by defendant Payne, and the left front of the latter's car struck the rear guard of plaintiff's bicycle, causing him to fall to the pavement.

Plaintiff relies for reversal of the judgment on these propositions:

*First: There is no substantial evidence to sustain the verdict of the jury and the judgment of the court predicated thereon.*

*Second: The trial judge committed prejudicial error by his conduct during the trial of the action.*

*Third: The trial court committed prejudicial error in sustaining objections to evidence offered by plaintiff.*

*Fourth: The trial court committed prejudicial error in instructing the jury as follows:*

### 1.

*"The fact that I instruct you upon the measure of damages which the plaintiff is entitled to recover is not to be taken by you as an intimation that I either believe or do not believe he is entitled to recover damages. It is my duty to instruct you fully upon the law governing every issue in this*

case. *The instructions upon the measure of damages are given you to guide you in fixing the damages which plaintiff is entitled to recover only in the event you believe from the evidence and the instructions I have given you that the plaintiff is entitled to recover. The giving of such instructions is no indication that the court believes or does not believe that the plaintiff is entitled to recover. That is a question for your sole and exclusive determination upon the evidence and the instructions which I have given you.*"

### 2.

"*Where the operator of a motor vehicle, without negligence on his part is by a sudden emergency placed in a position of imminent peril to himself or to another, without sufficient time in which to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as is required of him under ordinary circumstances, and is not liable for injuries caused by his machine if an accident occurs, even though a course of action other than that which he pursues might be more judicious, provided he exercises ordinary care in the stress of circumstances to avoid an accident.*

"*Therefore, if you find from a preponderance of the evidence that the defendant MARIE PAYNE in operating her motor vehicle was, without negligence on her part, placed by a sudden emergency in a position of imminent danger or peril without sufficient time in which to determine with certainty the best course to pursue, she would not be held to the same accuracy of judgment as would be required of her under ordinary circumstances and would not be liable for injuries caused by her machine if an accident occurred, even though a course of action other than that which she actually pursued might have been more judicious provided she exercised ordinary care in the stress of circumstances to avoid an accident.*"

### 3.

"*If, from all the evidence in this case, you find that the defendant Marie Payne was operating her automobile in an ordinary, prudent and careful manner and as an ordinary prudent person under all the circumstances would have operated it, then, regardless of all other questions, your verdict must be against the plaintiff and in favor of the defendants.*"

#### 4.

"The mere happening of an accident raises no presumption of negligence and you must not assume nor find, merely because it is undisputed that an accident occurred in which the plaintiff was injured, that the defendants were negligent or that they are legally responsible for the happening of the accident or the result thereof."

#### 5.

"You are instructed that as a matter of law no liability attaches where the injury results from what is termed an unavoidable and inevitable accident. Therefore, negligence can never be predicated upon a purely accidental occurrence of that type. An accident in law is one that happens without the negligence of any one proximately contributing thereto."

#### 6.

"If you find from a preponderance of the evidence in this case that the plaintiff's injuries, if any, resulted from the combined negligence of the plaintiff and the defendant Marie Payne, such combined negligence, if any, both proximately contributing to the happening of the accident, then I charge you the plaintiff cannot recover."

#### 7.

"You are instructed that Division IX Traffic Laws, Chapter 1, Section 452 of the Vehicle Code, which was in full force at the time and place of the accident herein provided as follows:

" 'Traffic Laws Apply to Persons Riding Bicycles or Animals.

" 'Every person riding a bicycle or riding or driving an animal upon a highway is subject to the provisions of this division applicable to the driver of a vehicle, except those provisions which by their very nature can have no application.'

"Chapter 8. Section 541 (b) 'No vehicle in a residence district shall be turned so as to proceed in the opposite direction when any other vehicle is approaching from either direction within two hundred feet, except at an intersection.'

"Chapter 8. Section 544. When Signal Required. '(a) No person shall turn a vehicle unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided

*herein in the event any other vehicle may be affected by such movement.*

*" '(b) Any signal of intention to turn right or left shall be given continuously during the last fifty feet traveled by the vehicle before turning.'*

*"Section 546. Method of giving signals. 'All signals herein required given by hand and arm shall be given from the left side of a vehicle in the following manner and such signals shall indicate as follows: (a) Left turn—hand and arm extended horizontally beyond the side of the vehicle.'*

*"Chapter 7. Section 525. 'Upon all roadways of sufficient width a vehicle shall be driven upon the right half of, and as close as practicable to the right-hand curb or edge of, such roadway, except as follows:*

*" '(b) When placing a vehicle in a lawful position for, and when such vehicle is lawfully making a left turn.' "*

### 8.

*"I charge you that under the law a person operating a motor vehicle is not bound to anticipate that another person operating a vehicle, including a bicycle, will violate the law, and in this case, I charge you that the defendant Marie Payne was not under the law required to anticipate that the plaintiff in riding his bicycle would violate any law, in the absence of some conduct upon the part of the plaintiff indicating to the defendant Marie Payne, as an ordinary prudent person under all of the surrounding circumstances, that the plaintiff did in fact intend to violate some law. And under such circumstances, the defendant Marie Payne would not be guilty of negligence in assuming that the plaintiff in riding his bicycle would not violate the law unless and until she had actual notice as an ordinary prudent person under all the circumstances that the plaintiff would violate the law."*

### 9.

*"You are instructed that Chapter VII, Section 671 b of the Vehicle Code which pertains to the requirements of sounding a horn on a motor vehicle, does not require the use of a horn in passing if a vehicle intends to pass another vehicle under any and all circumstances.*

*"Therefore, the question of sounding the horn is a matter which is left to the sound judgment of the operator of the motor vehicle in the exercise of ordinary care. The*

388

*Vehicle Code leaves the question of sounding the horn up to the driver and requires the sounding of a horn when reasonably necessary to insure safe operation. The horn shall not otherwise be used in a business or residence district.*

*"However, there is no evidence in this case establishing the locality of the accident as being in a residence or business district. The rule requiring the sounding of a horn before overtaking another vehicle is applicable only to a motor vehicle driven outside of a business or residence district. Therefore, the failure upon the part of defendant Marie Payne to sound a horn immediately prior to the happening of the accident does not constitute negligence as a matter of law."*

*Fifth: The trial court committed prejudicial error in refusing at plaintiff's request to instruct the jury as follows:*

*A.*

*"You are instructed that the negligence of any person which proximately causes injury to another, gives rise to a cause of action in favor of the injured party and against the negligent person and the injured party is entitled to recover compensation for all the detriment proximately caused by such negligence, whether it could have been anticipated or not, including all such detriment up to the time of the trial of such cause of action as well as including all such detriment reasonably certain to result therefrom in the future."*

*B.*

*"You are instructed that in determining the matter of damages, if any, in this case, you may consider the element of plaintiff's fear and apprehension, if any, of future disability caused by the injuries complained of by him herein."*

*C.*

*"You are instructed that ordinary care is that degree of care which an ordinarily prudent and reasonable person, under given circumstances, would ordinarily and reasonably exercise for his own rights and safety and the rights and safety of others, and the failure of a person to exercise such care is negligence."*

*D.*

*"You are instructed that all persons operating vehicles upon the public highways and streets of this State are under the duty to exercise proper care and must not operate said vehicles thereon in a negligent manner but must operate the*

*same in such manner and at such speed and under such control as would an ordinarily reasonable and prudent person under the same or similar circumstances; the duties of persons operating vehicles upon the public highways and streets of this State are reciprocal and no one has a greater right than another thereon but each and all must exercise the same degree of care as would an ordinarily reasonable and prudent person under the same or similar circumstances."*

### E.

*"You are instructed that all persons operating vehicles upon the public highways and streets of this State must use that degree of care, in so doing, which an ordinarily reasonable and prudent person would have used under the same and similar circumstances; that bicycle riders on the public highways and streets of this State, are not required to look back for vehicles approaching from behind to avoid collisions, or to avoid being run over from behind."*

### F.

*"You are instructed that one to whom a duty of care is owing by another has the right to assume that the person who owes such duty will perform it; and, in the absence of reasonable ground to think otherwise, it is not negligence on the part of the one to whom the duty is owing to assume that he will not be exposed to a danger which can come to him only through a violation of that duty by the person owing it."*

### G.

*"You are instructed that a party to the record of any civil action or proceeding or a person for whose immediate benefit such action or proceeding is prosecuted or defended, or the directors, officers, superintendent or managing agent of any corporation which is a party to the record, may be examined by the adverse party as if under cross-examination, subject to the rules applicable to the examination of other witnesses. The party calling such adverse witness shall not be bound by his testimony and the testimony given by such witness may be rebutted by the party calling him for such examination by other evidence. Such witness, when so called, may be examined by his own counsel, but only as to the matters testified to on such examination."*

### H.

*"You are instructed that a violation of the law relative*

to the operation of motor vehicles upon the public highways and streets of the State, other than a violation of the law relative to the prima facie speed of said vehicles thereon, constitutes negligence as a matter of law and if such·negligence proximately causes injury, the person violating said laws is liable for damages therefor in a civil action.''

### I.

"You are instructed that the California Vehicle Code, Section 531 (a) thereof, in force and effect at the time of the accident involved in this case, provided:

" 'The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon, and the condition of, the roadway.' ''

### J.

"You are instructed that if you find from the evidence that the defendant Marie Payne was following the plaintiff along South Harvard Boulevard on the day of the accident involved in this case, and you find from the evidence that she was so following him more closely than was reasonable and prudent, having due regard for the speed of the automobile which she was then driving and the traffic upon, and the condition of, said Harvard Boulevard, then you will find that she was negligent in so doing and if you further find from the evidence that said negligence was the proximate cause of the accident involved in this case and of the injuries and damages complained of by plaintiff herein, you will find for the plaintiff and against the defendants Marie Payne and Coffee Products of America, Inc. Ltd., a corporation.''

### K.

"You are instructed that the California Vehicle Code, Section 528 (b) thereof, in force and effect at the time of the accident involved in this case, provided:

" 'The driver of a motor vehicle, when travelling outside of a business or residence district and under other conditions where necessary to insure safety, shall give audible warning before overtaking a vehicle proceeding in the same direction.' ''

### L.

"You are instructed that the California Vehicle Code, Section 671 (b) thereof, in force and effect at the time of the accident involved in this case, provided:

" 'The driver of a motor vehicle, when reasonably necessary to insure safe operation shall give audible warning with his horn. Such horn shall not otherwise be used.' "

M.

"You are instructed that if you find from the evidence that the defendant Marie Payne was overtaking the plaintiff at the time and place involved in this case and further determine from the evidence that it was reasonably necessary in order to insure the safe operation of her automobile for the defendant Marie Payne to have given an audible warning with her horn, in so doing, and you further find from the evidence that she failed to give an audible warning with her horn, then you will find that she was negligent in so doing and if you further find from the evidence that said negligence was the proximate cause of the accident involved in this case and of the damages and injuries complained of by plaintiff herein, you will find for the plaintiff and against the defendants Marie Payne and Coffee Products of America, Inc., Ltd., a corporation."

N.

"You are instructed that it is not contributory negligence to fail to look out for danger, if any, where there is no reason to apprehend any."

O.

"You are instructed that a driver of a motor vehicle upon the public highways and streets of this State, although he may be driving his automobile at a legal speed, is still bound to anticipate that he may meet persons at any point of the highway or street, and he must, in order to avoid a charge of negligence, keep a proper look-out for them and keep his machine under such control as will enable him to avoid a collision with another person using proper care and caution, and if the situation requires, he must slow up and stop."

P.

"You are instructed that in operating an automobile over a public highway, its driver, under ordinary circumstances, cannot run down a vehicle proceeding in the same direction without having been negligent in the operation of his automobile unless it appears that the collision was due to the negligent conduct of the driver of the other vehicle. The mere fact that he does run down a vehicle ahead of him fur-

*nishes some evidence that he was either travelling at too high a rate of speed or following too closely."*

Q.

*"You are instructed that if you find from the evidence that defendant Marie Payne was driving the automobile involved in this case along South Harvard Boulevard, on the date of the accident involved herein, behind the plaintiff and that both of them were travelling in the same direction, and if you further find from the evidence that the defendant Marie Payne struck the plaintiff from the rear and ran down his bicycle, you are instructed that defendant Marie Payne could not have done so without having been negligent in the operation of her automobile, unless you find from the evidence that the collision was the proximate consequence of the contributory negligence of the plaintiff. If you do find from the evidence that the defendant Marie Payne did, under said circumstances, strike the plaintiff from the rear and did run down his bicycle, you are instructed that the mere fact furnishes some evidence that she was either traveling at too high a rate of speed or following plaintiff too closely. You are instructed that if you find that defendant Marie Payne struck the plaintiff from the rear and ran down his bicycle, under the said circumstances, and you find that the said collision was not contributed to proximately by any negligence of plaintiff, and if you find from the evidence that defendant Marie Payne, in so doing was negligent and that such negligence was the proximate cause of the damages and injuries complained of by plaintiff herein, you will find for the plaintiff and against the defendants Marie Payne and Coffee Products of America, Inc., Ltd., a corporation."*

R.

*"You are instructed that under the law, in a civil action the plaintiff may call the defendant as a witness, and the defendant may call the plaintiff as a witness and the party so called as a witness may be examined by the party calling him as if under cross-examination; however the party calling such witness is not bound by his testimony under such examination; in this case the defendants called only one witness on their behalf, E. P. Ripley; the plaintiff called the defendant Marie Payne as his witness under Section 2055 of the Code of Civil Procedure and examined her thereunder as on cross-examination; she was not called as a witness for the de-*

*fendants; you are instructed that the testimony of Marie Payne under said examination is not binding upon the plaintiff.''*

The first proposition is untenable. An examination of the record discloses substantial evidence in connection with the inferences which may be reasonably drawn therefrom to support the facts set forth above and each and every finding of fact upon which the verdict of the jury was necessarily predicated. From the evidence adduced at the trial the jury may have very properly believed that defendant Marie Payne was proceeding in a southerly direction on Harvard Boulevard at a speed of from 20 to 25 miles per hour; that she was proceeding on the right-hand side of the street, while plaintiff was likewise proceeding south on the same boulevard, and that suddenly without any warning, between the intersections and without looking to ascertain if he could proceed in safety, he made a left-hand turn into the path of the automobile being operated by said defendant and that this act constituted negligence on his part which was the sole proximate cause of the accident.

It is too well settled to need the citation of authority that when an inference can be reasonably deduced from the evidence sustaining a finding of the trial jury, this court is without power to substitute its deductions for those of the trial jury. Further discussion of the evidence is unnecessary.

The second proposition is likewise untenable. Plaintiff complains of the following incidents which occurred during the course of the trial:

(1) When the defendant Payne was testifying, under Code of Civil Procedure, section 2055, called by plaintiff and replying in an inaudible voice, the court advised her, ''Don't get nervous. No witness has ever been beaten or kicked in this court so you don't have to be nervous about it.''

(2) When said defendant was asked by plaintiff's counsel to reply to a question which went unanswered and which she did not state she misunderstood but asked him to repeat it, the court stated to plaintiff's counsel, ''Don't make it complex. Objection is sustained. Stricken out. I said it is complex.'' No objection had been interposed by defendant's counsel.

(3) When plaintiff's counsel asked defendant Payne, after she had testified that the accident occurred between Pico and Washington on South Harvard and that between the first two streets there was another intersecting street, whether the accident happened between Pico and Venice or Venice and Washington, and defendant's counsel stated that there was no need to take a lot of time to find out where the accident happened, and plaintiff's counsel suggested that it was cross-examination, the purpose of which was not only to determine that fact but to test the witness, the court stated, "I know, but it takes a lot of time".

(4) When defendant's counsel stated that there was no issue of where it happened, the court stated, "I don't think so. Let her answer."

(5) When plaintiff's counsel asked the defendant Payne to describe the nature of the accident, whether it was a collision between her automobile and the boy, the court stated, "That is asking a question which, of course, is very, very leading, and not proper cross-examination. If you mean how the accident happened, that is all right."

(6) After defendant Payne testified that she was about a block and a half behind plaintiff when she first saw him plaintiff's counsel asked her how far plaintiff was behind the point of impact when she first saw him, the following colloquy took place:

"Q. In other words, you have testified that you were a certain place when you first saw the boy? A. Yes sir.

"Q. You have testified that he was a certain place when you first saw him? A. Yes.

"Q. I am trying to find out whether that particular place behind the point of impact—

"THE COURT: She said she saw him first a block and a half away. She said that three times.

"MR. FALCONE: From the point of impact?

"THE COURT: Yes sir. You asked if she saw him before she crossed Venice boulevard, and she said she did not remember.

"MR. FALCONE: There is confusion in my mind.

"THE COURT: All right, ask it again. I listen very carefully to the testimony.

"MR. FALCONE: Well, the question is directed to how far the boy was behind the point of impact.

"THE COURT: How far the boy was behind the point of impact?

"MR. FALCONE: When she first saw him.

"THE COURT: I don't understand that question myself."

(7) Plaintiff's counsel asked the defendant Payne whether plaintiff was on his bicycle or whether he had fallen clear of the bicycle when she first saw him after the collision. Thereupon the following proceedings occurred:

"Q. Well, anywhere? A. No. He was right near the bicycle.

"Q. He was not on the bicycle? A. Yes, I believe he was. I am not positive.

"THE COURT: That depends on what you mean by 'on'.

"Q. By MR. FALCONE: Well, were his legs straddling the bicycle; were any portions of his body on the bicycle, touching the bicycle? A. Yes."

(8) On plaintiff's cross-examination of defendants' sole witness, Ripley, the following proceedings took place:

"Q. Where had you started your ride, Mr. Ripley, this morning, the morning that you saw this accident, from your home? A. Yes.

"Q. Where did you live? A. I lived at that time on West Adams boulevard.

"Q. You were coming north on South Harvard, is that right? A. Yes.

"Q. Now, there are stop signals on Washington, are there not? Washington and South Harvard? A. Yes.

"Q. There were on that date? A. Yes.

"Q. And did you stop at any buttons or a stop signal before—

"THE COURT: The objection is sustained."

(9) During plaintiff's direct examination the following proceedings took place:

"Q. You say you traveled about six feet from the curb line along South Harvard boulevard? A. Yes, sir.

"Q. Then you say you began gradually to go into the street?

"MR. JORZ: Just a minute.

"THE COURT: The objection is sustained.

"MR. FALCONE: I am repeating what I thought the witness said.

"THE COURT: I know you are. It is not necessary. The jury are supposed to be intelligent. I am willing to stipulate that they are.

"MR. FALCONE: It is a little boy, and I am trying to make it easier for him.

"THE COURT: I don't like this repetition of testimony by counsel."

(10) During the examination just referred to the following proceedings also occurred:

"Q. Can you tell the jury what injury you received, if any, from the impact of the automobile? A. I had a bump on my head and a black eye, some bruises on my arm and leg. I guess that is about all.

"Q. Which eye was bruised? A. This one, here (indicating).

"Q. Indicating the left eye? A. Yes.

"Q. Eldon, can you tell the jury your mental condition immediately after the collision with the automobile?

"THE COURT: The objection is sustained. He is not a psychiatrist. He can tell what he felt, what he did.

"Q. By MR. FALCONE: Eldon, how did you feel after the accident? A. Well, I got tired and had headaches for a while after.

"Q. Do you remember very clearly, Eldon, what happened the next two or three days? A. No, I don't."

(11) During the direct examination of Dr. Alphonse I. Wray, an expert witness for plaintiff, the following proceedings occurred:

"Q. Did you find any injury to his head other than the black eye? A. I couldn't positively tell, because in cases of that nature where we get—

"THE COURT: Did you find anything the matter with his head? A. I found that left area surrounding the eye and the head had been considerably swollen, sir, and deep bleeding which we call ecchymosis.

"Q. Did you or did you not, Doctor, find any injury to the brain, any brain condition? A. That I could not determine. I made X-rays in order—

"MR. JORZ: I don't want to interrupt—

"THE COURT: You have already answered. You say you do not know. A. My diagnosis was concussion of the brain."

(12) Again, during the examination of Doctor Wray, the following proceedings occurred:

"Q. Would the fact that these X-rays were negative to you, that is you read them negatively, eliminate the possibility of any injury to his brain?

"MR. JORZ: Object to that upon the ground that is asking for a possibility.

"THE COURT: The objection is sustained.

"Q. By MR. FALCONE: Doctor, would the X-ray reveal all injuries to the brain? A. Not even would it reveal fractures. You can take these X-rays and they very frequently do not reveal even fractures when there is a fracture at the base of the skull.

"MR. JORZ: Pardon me, if the court please. The doctor testified that his X-rays disclose nothing. I submit to indulge in a lot of speculation is misleading.

"THE COURT: There is no question about that. That is pure speculation.

"Q. By MR. FALCONE: Doctor, as I understand you, you treated Eldon the first time for something else in December, 1936, is that right? A. I did.

"Q. You had him more or less under your professional care ever since? A. I have.

"Q. You are familiar with his case history? A. I am.

"Q. You are familiar with the type of brain tumor he was operated on for? A. I saw him immediately afterwards.

"Q. Doctor, with your knowledge of Eldon's case, with your knowledge of his physical condition, with your knowledge of the examination you have conducted of Eldon, the findings you made from the examination, and the treatment you have prescribed for him as a result thereof, have you or have you not an opinion as to the probable consequence reasonable to ensue from that traumatic injury that he suffered on February 4th?

"THE COURT: The objection is sustained.

"Q. By MR. FALCONE: Doctor, did you or did you not form an opinion, based upon your observations of Eldon's condition, February 4, 1938, to-wit: ecchymosis and bruises on his body, injuries to his limb and to his finger, and your diagnosis of brain concussion, and based upon your knowledge of the history of the case, particularly with reference to the brain tumor surgery, as to whether or not the brain

tumor condition was aggravated by the conditions you found on February 4, 1938?''

(13) Again, during the same examination, this occurred:

''Q. Doctor, in your opinion is Eldon at the present time cured of any of those conditions which you found on February 4, 1938?

MR. JORZ: I object to the form of the question as indefinite.

''THE COURT: The objection is sustained. He said he had bruises on the arm, leg, ecchymosis to the eye, a bump on the forehead, the eye was closed, and he indicated cold applications. I can tell you what he said then. Do you want to base something else on that?

''Q. By MR. FALCONE: Doctor, how long would it take to determine whether or not the conditions which Eldon suffered from February 4, 1938, and the causes thereof had any effect on his brain, particularly with reference to the brain tumor?

''THE COURT: He answered that. He said not any. He just answered. He said it would not have any. He said there was no metastasis.

''MR. FALCONE: He answered some time ago that—

''THE COURT: He has answered. He said no metastasis, which means it was not disturbed, nothing done, just the same as it was before. That is correct. That is what you said, is it not? A. I answered one question for one thing and I did not answer the other question. If I am permitted to answer the question put before me, if Your Honor will permit it, I will be very glad to answer it.

''THE COURT: I think you have already answered it.

''MR. PIERCE: The doctor's statement was that there had been no metastasis. He did not state that would be the only possible and probable result of this injury.

''MR. JORZ: ''I object to any possibility.

''THE COURT: To the possibility the objection is sustained.

''MR. FALCONE: Well, probabilities.

''THE COURT: What is your prognosis? I will ask him that one question. A. My prognosis of this case is guarded; as I stated in the early part of the examination, that when a child or any person is subjected to a concussion of the brain, that your results are not determined within a few days or a

few hours; that it may extend of a period of time of a year—from a few days to a year or more.

"MR. JORZ: I ask that that be stricken out.

"THE COURT: That is stricken out as not responsive to any question, a lecture on the subject, and not answering the question. Now you may ask your question.

"MR. FALCONE: I will ask to repeat Your Honor's question: what his prognosis of the patient was.

"THE COURT: That is what you are trying to get. I think he is entitled to answer it, if he will.

"Q. By MR. FALCONE: Doctor will you give the court and the jury to the best of your ability what your professional prognosis was of the boy? A. I have stated that was guarded; that I could not say what the results would be from the injury.

"THE COURT: He says he can't say. That answers your question."

"REDIRECT EXAMINATION.

"By MR. FALCONE: Q. Doctor, is the amount of $125 a reasonable value of the services that you rendered Eldon since February 4, 1938? A. It is not excessive.

"MR. FALCONE: Thank you.

"THE COURT: He did not ask you that. Would you repeat the question?

"MR. FALCONE: The Court, doctor, stated that your answer was not responsive. A. Yes, repeat the question. (The last question was read by the reporter.) A. Yes."

(14) During the direct examination of Dr. Leo J. Adelstein, an expert witness for plaintiff, the following occurred:

"Q. By MR. FALCONE: Doctor, based upon your knowledge of Eldon's condition, particularly your examination of him, your findings, to wit, that he was sick and vomited, was obliged to and did lie on his back most of the time, your examination of his eye grounds, your diagnosis of the presence of some pressure, some pressure from a tumor of the brain, particularly of the pineal gland; based upon your surgery of that brain condition, and your observation and treatment and care of Eldon was thereafter post-operatively; assume that Eldon was involved in an accident in which he was thrown from a bicycle, and thrown to the pavement, bumped his head against the pavement and suffered a brain concussion in the left frontal area of his head which

was discolored, that he had ecchymosis and swelling of the eye, closing of his left eye, what in your opinion would be the effect of those traumatic injuries that he suffered in that accident upon the condition of his brain? A. I would say the likelihood would be that—

"MR. JORZ: I object to the 'likelihood'.

"THE COURT: 'Likelihood' does not mean anything.

"A. In my opinion he would suffer an aggravation of the previous condition.

"Q. By MR. FALCONE: Doctor, would that aggravation necessarily manifest itself in a year or six months? A. It usually does within six months to a year.

"Q. Does it ever manifest itself after a year? A. Well, ordinarily not, although that is possible; but it usually manifests itself sooner than that.

"MR. JORZ: I will ask that that be stricken out and the jury instructed to disregard possibility.

"THE COURT: Yes. Stricken out."

The errors which plaintiff predicates upon the foregoing incidents will not be considered by this court for the reason that plaintiff did not lay the proper foundation in the trial court for review here. Unless the harmful result of the alleged misconduct of the trial judge cannot be obviated by appropriate instructions of the trial court, error cannot be predicated in this court on such alleged misconduct in the absence of (a) assignment of such misconduct as error, and (b) a request to the trial court to instruct the jury to disregard it. (*Sitkei* v. *Ralphs Grocery Co.*, 25 Cal. App. (2d) 294, 296 [77 Pac. (2d) 311].) In the instant case plaintiff did not assign the trial judge's alleged misconduct as error, nor did he request him to instruct the jury to disregard such alleged misconduct, although the harm thereof, if any, might well have been obviated by appropriate instructions.

The third proposition is without merit. The court's rulings on objections and on its own motion to questions asked witnesses were proper or in no way prejudicial to plaintiff.

The instructions set forth in paragraphs 1, 2, 3, and 4 of plaintiff's fourth proposition are correct statements of the principles of law contained therein.

The instructions contained in paragraphs 5 and 6 of plaintiff's fourth proposition are correct statements of the principles of law contained therein. (*Zohner* v. *Sierra Nevada etc. Co.,* 114 Cal. App. 85, 90 [299 Pac. 749]; *Sitkei* v. *Ralphs Grocery Store, supra,* at 296.)

The instructions contained in paragraphs 7, 8, and 9 of plaintiff's fourth proposition are all correct statements of the principles of law incorporated therein.

The trial court did not commit error in refusing plaintiff's instructions A and B, set forth in plaintiff's fifth proposition, for the reason that the law is established in California that if a jury under proper instructions returns a general verdict in favor of the defendant in a negligence action, error may not be predicated upon the refusal to give or the giving of erroneous instructions relative to the issue of damages. (*Hurd* v. *San Francisco,* 49 Cal. App. 361, 363 [193 Pac. 507]; *De La Torre* v. *Johnson,* 203 Cal. 374, 378 [264 Pac. 485].)

The rules of law in the instructions set forth in paragraphs C, D, and N of plaintiff's fifth proposition were fully covered by instructions given to the jury, reading as follows:

"You are instructed that the drivers of automobiles have no special right or privilege in the use or enjoyment of the public highways and streets of this state; the law indeed imposes upon them a degree of care commensurate with the peculiar hazard attending the operation of said automobiles.

"You are instructed that negligence is the failure to fulfill a legal duty to exercise the proper degree of care whereby injury accrues to a party to whom the duty is owed; it consists of the omission to do something which an ordinarily prudent and reasonable person would have done under given circumstances, or in doing something which an ordinarily prudent and reasonable person would not have done under given circumstances; it is the failure to exercise ordinary care under given circumstances; it is not absolute or to be measured in all cases in accordance with some precise standard, but always relates to some circumstances of time, place, and person.

"You are instructed that the California Vehicle Code, section 510 thereof, in force and effect at the time of the

accident involved in this case, provided: 'No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.'

"You are instructed that bicycle riders on the public highways and streets of this state have the same rights as automobile drivers to the use of said public highways and streets."

The instructions set forth in paragraphs H, I, M, O, P, and Q of plaintiff's fifth proposition were correctly refused, in view of the fact that they assume that the accident was a rear-end collision, which is contrary to the implied finding of the jury which is supported by substantial evidence.

The instructions set forth in paragraphs E and G of plaintiff's fifth proposition were properly refused, because the substance of the instructions was given to the jury in other instructions read by the court.

Plaintiff has failed to point out wherein the failure to give instructions F and R in his fifth proposition resulted in prejudice to him. Therefore the alleged error predicated upon the refusal to give such instructions must be disregarded by us. (Const., art. VI, sec. 4½.)

The substance of the law as set forth in the instructions in paragraphs J, K, and L of plaintiff's fifth proposition was given to the jury when the trial court instructed it as follows:

"You are instructed that chapter VII, section 671b, of the Vehicle Code, which pertains to the requirements of sounding a horn on a motor vehicle, does not require the use of a horn in passing if a vehicle intends to pass another vehicle under any and all circumstances.

"Therefore, the question of sounding the horn is a matter which is left to the sound judgment of the operator of the motor vehicle in the exercise of ordinary care. The Vehicle Code leaves the question of sounding the horn up to the driver and requires the sounding of a horn when reasonably necessary to insure safe operation. The horn shall not otherwise be used in a business or residence district.

"However, there is no evidence in this case establishing the locality of the accident as being in a residence or business district. The rule requiring the sounding of a horn before overtaking another vehicle is applicable only to a motor vehicle driven outside of a business or residence district. Therefore, the failure upon the part of defendant Marie Payne to sound a horn immediately prior to the happening of the accident does not constitute negligence as a matter of law."

For the foregoing reasons the judgment is affirmed.

Wood, Acting P. J., concurred in the judgment.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 26, 1940. Carter, J., voted for a hearing.