[Civ. No. 19681.   Second Dist., Div. Two.   Dec. 11, 1953.]

OLIVER T. BATES, Appellant, v. LEON T. NEWMAN, Respondent.

Betty & Campbell and Freiburghouse & Woodard for Appellant.

Reed & Kirtland and Henry E. Kappler for Respondent.

McCOMB, J.—This is an action for damages for personal injuries suffered by plaintiff as a result of the alleged negligence of an osteopathic physician and surgeon in the performance of a circumcision upon plaintiff, and in his care and treatment. The case was tried before the court and jury resulting in a verdict for defendant. There is an appeal from the judgment and a purported appeal from the order denying plaintiff's motion for a new trial.

*Facts*: Plaintiff, a large man 37 years of age, was first married in 1940, and to his present wife in 1948. During his married life he had enjoyed normal, satisfactory and happy

sexual intercourse and sexual relations with the respective wives about twice a week. Prior to May 16, 1950 (the date defendant performed a circumcision upon plaintiff), his penis when relaxed measured three to three and one half inches and during erection it was from six to six and one half inches. In erection it pointed in an upward direction or at an angle which was normal. In April, 1950, plaintiff was having trouble with his organ and consulted defendant who advised him that he should be circumcised. On May 16, 1950, defendant performed the operation. Thereafter plaintiff returned to defendant's office for treatment and on May 23, 1950, when the bandage was removed, plaintiff noticed there was no shaft visible and that only the head was showing when the organ was relaxed. Thereafter whenever plaintiff had an erection he suffered severe pain, and his visible penis measured about one inch including the head, and it pulled the skin of the scrotum up so that it looked like a tepee or tent.

Plaintiff testified that on June 6, 1950, he visited the doctor and told him that he had cut him off short and he did not have any penis. Defendant replied, ''Yes, I think I did take off a little too much. I can fix you up.'' He also advised plaintiff he would do a repair operation without any charge. Several operations were performed thereafter, none of which resulted in plaintiff's being returned to the condition which he considered normal.

■ *Questions*: First: *Did the trial judge commit error in permitting two doctors who had examined plaintiff to express an opinion as to the position of plaintiff's penis and the effect of the abdominal apron upon his ability to have sexual intercourse?*

*No.* Plaintiff does not call our attention to any authority in support of his contention that the doctors' statements were inadmissible. Both doctors had examined plaintiff. No question is raised as to their competency or qualifications. It is clear that from their knowledge of anatomy they were entitled to express their opinion as to the effect of plaintiff's fatty apron on his ability to have intercourse.

■ A medical expert may testify as to the nature of an injury or condition, the ability or inability of a person to do certain acts. (See cases cited 32 C.J.S. (1952) Evidence, § 534, p. 250, n. 35; *cf. Lawrence* v. *City of Los Angeles,* 53 Cal.App.2d 6, 8 [1] [127 P.2d 931] (hearing denied by the Supreme Court).) ■ In considering the weight to be

given to the opinion of the doctors, the jury could, of course, consider the testimony of plaintiff and his wife and the fact that neither doctor had seen plaintiff's penis in erection. (*Owings* v. *Industrial Acc. Com.*, 31 Cal.2d 689, 692 [3] [192 P.2d 1]; *Gazzera* v. *City & County of San Francisco*, 70 Cal. App.2d 833, 838 [2] [161 P.2d 806].)

Second: *Did the trial court err in its ruling upon the evidence of Dr. Sloan?*

*No.* During the course of the trial the following testimony was received:

(A) "The Court: Pardon me, Doctor, you mean that there were no visible indications that there had been such an operation?

"The Witness: That is right, your Honor. This may have been a natural formation with this individual and the entire story a fabrication, so far as I am concerned. I could see no evidence that there had been recent surgery done, because I have seen penises in this condition that were born so.

"Mr. Campbell: Just a moment, your Honor. I am going to move that the whole answer be stricken as unresponsive and that the jury be admonished to disregard the answer in toto.

"The Court: The motion is denied."

The court's ruling was correct. The question called for an answer to a simple question. The first part of the answer was clearly responsive—"That is right, your Honor." The remainder of the answer may have been unresponsive. However, counsel moved that the whole answer be stricken as unresponsive and that the jury be admonished to disregard the answer in toto. Counsel should have moved to strike only that portion of the answer which was unresponsive. The burden is upon the party objecting to make the proper objection and motion.

Where testimony is admitted, some of which is relevant and competent and is intermingled with that which is improper, a motion should be directed to the portion attacked so that no uncertainty may remain as to the testimony challenged; otherwise a refusal to grant the motion is not error. (*Rose* v. *State*, 19 Cal.2d 713, 742 [19] [123 P.2d 505].)

(B) "Q. In other words, did you observe anything about it that would appear to be abnormal in so far as any healing was concerned, assuming that some surgery had previously been done? A. To the point you make, as to the healing?

"Q. Yes. A. Whether anything had been done, I was unable to determine from observation only."

■ No objection or motion to strike this testimony was made. Therefore error in the reception of it may not be claimed on appeal.

(C) "A. . . . At that moment my belief was that he had more shaft of penis available for intercourse than before he ever had anything done to his penis, whenever he had it done, because I created more shaft than, in my humble opinion was ever present by the good Lord's making. I may be wrong."

No objection or motion to strike this testimony was made. Therefore error may not be predicated in this court upon the reception of the answer.

(D) "Q. In other words, some do it [perform a circumcision] one way and some do it another; is that what you mean?

"Mr. Campbell: Just a moment. May I object to that on the ground it is improper cross-examination; an attempt to secure an opinion from this witness he didn't testify to on direct.

"The Court: Overruled.

"Q. by Mr. Kirtland: Is that right, Doctor?

"The Witness: Correct."

■ To this question an objection was made and overruled. Plaintiff may not urge error here in the overruling of the foregoing objection for the reason that similar evidence had been received without objection, the following question and answer having been asked of Dr. Sloan without objection being made thereto:

"Q. Now when the foreskin comes over the head, a circumcision is done to put the prepuce about right back of the head; is that right? A. That may vary with the doctor who is doing the operating."

■ Plaintiff urges that it was error to permit Dr. Sloan to express "an expert opinion" in answer to questions asked him. Plaintiff is not in a position to urge this proposition on appeal for the reason that in plaintiff's examination of Dr. Sloan on his direct examination, he on a number of occasions, asked the doctor for his professional opinion on various subjects, thereby conceding that the doctor was qualified to express such an opinion.

Third: *Did the trial court err in refusing to receive in evidence as part of plaintiff's rebuttal two color slides of the*

*plaintiff's penis in erection, which slides had been in the possession of plaintiff during plaintiff's case in chief?*

*No.* Plaintiff urges that such slides were admissible upon the theory that they were proper rebuttal of the testimony of Doctors Crane and Zukor, stating in his brief:

"Until this testimony (Crane and Zukor) came in on defendant's case, the plaintiff had nothing to rebut in connection with the question of the downward slant of his penis upon erection and the inability by reason thereof to have normal intercourse, and the effect of the abdominal apron, if any, on the penis in erection. The necessity to rebut such testimony came about at the close of defendant's case."

In advancing this argument plaintiff acknowledges the testimony of his own witness, Dr. Sloan, on cross-examination wherein he stated that it would be impossible for plaintiff to observe his genitals when standing up due to the fatty abdominal apron. Without objection Dr. Sloan stated that he examined plaintiff and his notes revealed the following:

"Patient in the office. Examination of the penis shows complete healing and the patient has more shaft exposed than he ever had available for intercourse before surgery. Whether his personal anatomical conformation will permit his insertion of penis for intercourse is a doubtful matter to me. The size of his abdomen most likely would prevent this accomplishment."

Dr. Sloan further testified: "The Court: . . . Do you mean the position of the abdomen was such that it would rest on the penis when erect, if he were standing?

"The Witness: There is no speculation in my mind about that. The weight of the fat apron of the abdomen would depress the erect penis in a downward direction."

The foregoing testimony was received during the presentation of plaintiff's case in chief. Therefore there was evidence prior to the testimony of the two defense witnesses, Doctors Zukor and Crane, relative to the inability of plaintiff to have intercourse due to his abdominal apron.

The law is established that one who has the affirmative of an issue may not reserve a portion of his evidence until an opposite party has exhausted his evidence to negative that offered in the first instance. If he does so the court may refuse to allow him to introduce additional evidence on the subject after defendant rests. (*Lipman* v. *Ashburn,* 106 Cal.App.2d 616, 620 [4] [235 P.2d 627].)

There is likewise no merit in plaintiff's contention that the trial court erred in refusing plaintiff the right to demonstrate to the jury his ability to sustain an erection. Such evidence was merely cumulative of evidence previously received. ▮ It is within the discretion of the trial court whether or not to receive cumulative evidence. (Code Civ. Proc., § 2044; *Kalmus* v. *Kalmus*, 103 Cal.App.2d 405, 423 [26] [230 P.2d 57] (hearing denied by the Supreme Court); *Moore* v. *Marshall*, 41 Cal.App.2d 490, 494 [5] [107 P.2d 89].)

Fourth: *Did the court err in giving the instructions hereinafter set forth?*

*No.* The court instructed the jury as follows:

(A) "By undertaking professional service to a patient, a physician and surgeon impliedly represents that he possesses, and it is his duty to possess, that degree of learning and skill ordinarily possessed by physicians and surgeons of good standing, practicing in the same locality.

"It is further his duty to use the care ordinarily exercised in like cases by reputable members of his profession practicing in the same locality, to use reasonable diligence and his best judgment in the exercise of his skill and application of his learning in an effort to accomplish the purpose for which he is employed."

The court deleted from the proposed instruction the following language: "If you should find that the defendant failed in any of the duties I have mentioned, and that such failure was a proximate cause of injury to the plaintiff [and if you find against the defense of contributory negligence, an issue that you must consider and determine], then your verdict must be in plaintiff's favor."

▮ The deletion of this portion of the instruction was proper. The original instruction was a formula instruction since in effect it directed a verdict in plaintiff's favor in the event certain things were found by the jurors. ▮ Formula instructions are not favored in the law. (*Tice* v. *Pacific Elec. Ry. Co.*, 36 Cal.App.2d 66, 71 [6] [96 P.2d 1022, 97 P.2d 844] (hearing denied by the Supreme Court).)

▮ Every element embraced in the deleted paragraph is fully covered by other instructions read to the jury. ▮ It is settled that instructions must be read together and harmonized. (*Kraft* v. *Nemeth*, 115 Cal.App.2d 50, 53 [3] [251 P.2d 355].) The trial judge properly instructed the jury on the definition of negligence, the definition of ordinary care

and proximate cause. The criticized instruction told the jury the violation of any duty defined in the instruction was a form of negligence. Since negligence, ordinary care and proximate cause had already been defined for the jury, it is clear that the jury was adequately instructed with reference to the liability of the physician and surgeon.

(B) The trial court gave six instructions in which the jury were told that under certain conditions they might find in favor of defendant, while it gave only one instruction as to when they might find for plaintiff and against defendant. No authority is cited by plaintiff in support of his proposition that this was error. He has not singled out any instruction or pointed out where there was any error in the giving of such an instruction. ▆▆▆ Apparently his theory is that the instructions, even if they correctly state the law, must be given in such a fashion that the number which presumably favor the plaintiff will equal or counterbalance the number which presumably favor the defendant. Such is not the law. The instructions given were correct.

(C) The trial court instructed the jury on contributory negligence thus:

"In determining whether negligence or proximate cause or contributory negligence has been proved by a preponderance of evidence, you should consider all the evidence bearing either way upon the question, regardless of who produced it. A party is entitled to the same benefit from evidence that favors his cause or defense when produced by his adversary as when produced by himself. Thus, if evidence presented by the plaintiff himself should support a finding that he was guilty of contributory negligence, that finding would be adequately supported, even if the defendant produced no additional evidence to the same effect. In like manner, a defendant's own evidence may show, and support a finding of, negligence on his part."

The foregoing instruction was correct and plaintiff has waived any right to object to the giving of such instruction since he requested several instructions upon the same issue.

▆▆▆ The rule is accurately stated by Mr. Justice Peek in *Jansen* v. *Southern Pac. Co.*, 112 Cal.App.2d 833, 845 [247 P.2d 581], thus: "It is well established that 'A party cannot complain of an instruction given at his own request or of an error in an instruction given at the insistence of his adversary when he requested a substantially similar one.' (Citing cases.)" Since plaintiff requested the court to submit the

issue of contributory negligence to the jury in two separate instructions, the foregoing rule is here applicable.

(D) The court instructed the jury as to the elements of damages as follows:

"If under the court's instruction you should find that said plaintiff is entitled to a verdict, you will consider not only the elements of damage heretofore mentioned, but you will award him also such sum as will compensate reasonably for any pain, discomfort, fears, anxiety, and other mental and emotional distresses, if any, suffered by him, and approximately resulting from the injury in question, and for such like detriment, if any, as he is reasonably certain to suffer in the future from the same cause."

Plaintiff claims that it was error to give the foregoing instruction because he asked for instructions which were refused that contained as elements of damage, shame, humiliation, wounded pride, worry, etc. Such objections are without merit. Clearly the words used in the instruction "other mental and emotional distresses" covered the elements of damages upon which plaintiff had requested instructions.

*Freiburg* v. *Israel*, 45 Cal.App. 138 [187 P. 130], cited by plaintiff, is not applicable to the facts of the present case. In that case no question of the propriety of any instruction was involved.

Fifth: *Did the trial court commit prejudicial error in limiting the time for delivery of plaintiff's opening statement?*

*No.* The trial judge allowed defendant's and plaintiff's counsel one half hour to make their opening statement to the jury. Plaintiff now complains that he was prejudiced in not having more time to make his opening statement. This claim is without merit. Before the evidence was received the trial judge made a statement to the jury relative to the nature of the case, after which defendant's counsel suggested that he was not quite satisfied with the impression the statement might have created, after which the court stated that counsel would have many opportunities to clear up the situation in the *voir dire* examination. At this point plaintiff's counsel stated, "I think the court's statement was very fair, on the face of it, and I think no further explanation is needed."

It is clear that plaintiff has thus conceded that between his own statement to the jury and that of the court, the jury was fully advised of the nature of the case. In any event the determination of the length of time for the opening statement is purely a matter for the discretion of the trial court.

In the absence of a showing of an abuse of such discretion, the trial court's designation of the limits of an argument will not be disturbed on appeal. (*Rosenfield* v. *Vosper*, 86 Cal.App.2d 687, 695 [10] [195 P.2d 530] (hearing denied by the Supreme Court).) In the instant case there is no showing of an abuse of discretion of the trial court and the foregoing rule is applicable.

Sixth: *Did the trial court err in refusing to allow notebooks to be passed to the jurors prior to the opening statement of plaintiff's counsel?*

*No.* Immediately prior to making his opening statement counsel for plaintiff requested the trial judge for permission to give each of the jurors a notebook and pencil to assist them in note taking. The trial judge stated that he would not take any action upon the request "at this time." He further stated to the jurors that they could take such notes as they desired. Clearly there is no merit in plaintiff's contention that this was error.

Seventh: *Did the trial court commit any prejudicial misconduct in making remarks during the course of the trial?*

*No.* Typical examples of the remarks of which plaintiff complains are the following:

i. The trial judge stated to the prospective jurors before the *void dire* examination: "This will not be a pleasant case to try. Unfortunately, neither the court nor the jurors in any way can choose the case we would like to try."

ii. "I am only suggesting that we speed up the trial as much as possible."

iii. "Let's not prove that four times."

iv. "You don't have to spend so much detail on it."

v. "This trial in my opinion has been unduly prolonged."

vi. "But we are not going to go over everything in a hypothetical question twice."

vii. "Let's not go over it again."

viii. "Let's get to something else."

ix. "And I think further offers, speaking in a light vein, will become contemptuous."

x. "Disagreement is common in the medical professions, is it not?"

It is not shown that any or all of the foregoing remarks were improper or resulted in prejudice to plaintiff. In addition the rule is established that if the harmful result of the misconduct of the trial judge can be obviated by bringing the matter to his attention, as a predicate to claiming error

on appeal, (a) an assignment of such misconduct must be made in the trial court, and (b) a request made of that court to instruct the jury to disregard it. (*Church* v. *Payne*, 36 Cal.App.2d 382, 400 [97 P.2d 819] (hearing denied by the Supreme Court); *Metzenbaum* v. *Metzenbaum*, 96 Cal.App. 2d 197, 199 [6] [214 P.2d 603]; *Rednall* v. *Thompson*, 108 Cal.App.2d 662, 665 [1] [239 P.2d 693].) In none of the instances of which plaintiff complains did he meet any of the foregoing requirements. Hence he is barred from urging error therein on this appeal.

■ Eighth: *Did the court err in ordering plaintiff's counsel to erase certain material which he had placed on a blackboard prior to the conclusion of plaintiff's case, and which he intended to use in his opening argument to the jury?*

*No.* Plaintiff's counsel placed upon a blackboard prior to the completion of his case certain material which he apparently intended to use, not as evidence but as an aid in the presentation of his opening argument to the jury. There were a number of jurors present in the courtroom at the time it was placed on the blackboard. The reception of testimony had not been completed and any juror could have been misled into believing it was evidence and perhaps some sort of exhibit in the case.

Clearly the court was correct in ordering the material removed. Further, plaintiff, by failing to object in the trial court to the judge's order, has waived the right to urge the order as misconduct on appeal. (See *Metzenbaum* v. *Metzenbaum, supra*; *Church* v. *Payne, supra.*)

Ninth: *Did the trial court err in limiting the time of the argument to the jurors to two hours on each side?*

*No.* The trial judge at the close of the evidence stated that each side would be limited to two hours in their argument to the jury. On the following morning counsel for plaintiff requested permission to put on further rebuttal testimony and made further offers of proof with reference to two of his exhibits. This argument took approximately thirty minutes in chambers. As a result of the use of this time, and the time necessary to put on the rebuttal testimony, the court cut down the time for closing oral argument to one hour and forty-five minutes. The record fails to disclose that plaintiff requested any further or additional time. Hence he has waived any right to urge that he did not have sufficient time to present his argument to the jury.

It would obviously have been unfair to defendant for plaintiff to start with an opening argument to be followed by defendant's argument and then have only a portion of plaintiff's closing argument to be followed by a further summation by plaintiff on the succeeding day immediately before the instructions to the jury. The court exercised a sound discretion in holding that it would be better to have both arguments presented on the same day.

The time to be allowed for oral argument is a matter resting within the sound discretion of the trial court. Unless there is an obvious abuse of discretion its ruling will not be disturbed on appeal. (*Rosenfield* v. *Vosper,* 86 Cal.App. 2d 687, 695 [10] [195 P.2d 530].) In the instant case the foregoing rule is applicable since there is no showing of an abuse of discretion in the trial court's order.

Tenth: *Were jurors Sandstrom and Smith guilty of misconduct?*

*No.* (a) Plaintiff in his motion for a new trial filed an affidavit of Alexander Hartman stating that juror Sandstrom had, in the presence of the jurors, stated that "Dr. Newman [defendant] had a good reputation in South Gate." Juror Sandstrom signed an affidavit catagorically denying that she had made such statement. In passing upon conflicting affidavits the implied finding of the trial court supported, as in the instant case, by substantial evidence will not be disturbed on appeal. (*MacPherson* v. *West Coast Transit Co.,* 94 Cal. App. 463, 468 [5] [271 P. 509].) Therefore we must assume the trial court found that the juror had not made the statement attributed to her.

(b) The rule just stated is applicable to the alleged misconduct of juror Smith. Affidavits were filed stating that she had made false statements on her *voir dire* examination and had stated during the deliberations of the jury that she had had an operation at one time with a bad result requiring some repair work, and that she had not sued her doctor and she saw no reason for doing so. Juror Smith filed an affidavit denying that she had made such statements. This supports the implied finding of the trial court to the same effect.

Eleventh: *Did the trial court commit prejudicial error in admitting pictures of the operating room of defendant in evidence?*

*No.* Over objection of plaintiff two photographs of the interior of defendant's operating room were admitted in evidence. In view of the fact that the operative procedure was

performed in the office of defendant, it is certain that no prejudicial error could result in the admission of the pictures in question. In the light of the issues, no prejudice appears to have been suffered from their admission.

The record is free from error. The order denying the motion for a new trial being nonappealable is dismissed. (See cases cited in 6 West's Cal. Dig. (1951) Appeal and Error, § 782, p. 78.)

The judgment is affirmed.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied December 30, 1953, and appellant's petition for a hearing by the Supreme Court was denied February 3, 1954. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.