(713 P.2d 957)

No. 57,191

MICHELLE R. WEST, *Appellant*, v. TODD R. MARTIN, *Appellee*.

Opinion filed January 30, 1986.

*Thomas J. Koehler*, of Law Offices of Thomas E. Sullivan, P.A., of Overland Park, for appellant.

*David K. Martin*, of Payne & Jones, Chartered, of Overland Park, for appellee.

Before ABBOTT, C.J., PARKS, J., and HARRY G. MILLER, District Judge retired, assigned.

ABBOTT, J.: This is a personal injury case. A directed verdict was entered in favor of the plaintiff on the issue of liability. The jury determined plaintiff's damages to be $5,978.90. Plaintiff appeals, raising four issues. We reverse.

The plaintiff complains that the trial court limited opening statements to ten minutes and disallowed the use of demonstrative evidence in presenting the opening statement.

The time limitation placed on opening statements is subject to the control of the trial court in the exercise of its discretion. 75 Am. Jur. 2d, Trial § 204. The lengthiness or brevity of opening statements is largely within the discretion and control of the trial court. *Caldwell v. Skinner*, 105 Kan. 32, 181 Pac. 568 (1919).

Thus, the plaintiff must demonstrate an abuse of discretion by the trial court in allowing only ten minutes for each opening statement. Moreover, in addition to overcoming this difficult burden of proof, the plaintiff has not preserved this question for appellate review. The plaintiff did not object in the trial court to the time limit placed on opening statements. The issue is not properly before us because plaintiff failed to request additional time or object to the amount of time the trial court allowed. We hold that the trial court did not abuse its discretion in limiting the opening statements to ten minutes per side.

We see no reason or need to restrict the use of demonstrative evidence in an opening statement unless a genuine and unresolved question exists as to its admissibility. Demonstrative evidence is a valuable tool in "setting the stage." It will enable the jurors to understand what is going to be presented so that they see the whole picture rather than "bits and pieces," or what might otherwise appear to be disjointed and meaningless evidence. We are unwilling to hold that it was reversible error in this case, because we cannot tell from the record exactly what plaintiff wanted to use or whether all of what plaintiff wanted to use was ultimately introduced into evidence.

The plaintiff contends that damages of $5,978.90 as determined by the jury in this personal injury action are inadequate and indicate passion and prejudice by the jury when there was evidence adduced at trial that plaintiff incurred medical expenses alone totaling $15,457.83.

When a verdict is so inadequate as to indicate partiality, passion or prejudice, it should be set aside and a new trial granted. *Furstenberg v. Wesley Medical Center,* 200 Kan. 277, 436 P.2d 369 (1968); *Corman, Administrator v. WEG Dial Telephone, Inc.,* 194 Kan. 783, 402 P.2d 112 (1965); *Putter v. Bowman,* 7 Kan. App. 2d 323, 641 P.2d 411, *rev. denied* 231 Kan. 801 (1982). An inadequate verdict in the face of uncontroverted testimony indicates passion and prejudice and justifies the granting of a new trial. *Briscoe v. Ehrlich,* 9 Kan. App. 2d 191, 674 P.2d 1064, *rev. denied* 235 Kan. 1041 (1984). For the purpose of reviewing the adequacy of a verdict, each case stands on its own facts. An examination of the cases challenging the sufficiency or insufficiency of a verdict for damages reveals no simple, symmetrical pattern or design. *McGuire v. Sifers,* 235 Kan. 368, 681 P.2d 1025 (1984).

The verdict rendered in this case was not the result of the jury's disregard of uncontroverted testimony. The issue was whether all of the medical treatment incurred by the plaintiff was medically necessary. While plaintiff introduced into evidence the hospitalization, medical and drug prescription bills, and provided testimony of tests and procedures from the treating physicians, the defendant countered with the testimony of Dr. Edward Prostic, an orthopedic surgeon employed by defendant, who opined that only the first hospitalization was medically necessary. Thus, the jury could have, and probably did, accept the defendant's contention that some of the medical expenses were unnecessary and, therefore, disallowed recovery for some of plaintiff's treatment. In these instances, the extent of recovery boils down to the credibility of the witnesses. This assessment, of course, is left to the trier of facts. We would be reluctant to reverse on the issue based on the record before us. We need not decide this issue, however, because of the result we reach on the next two issues.

The trial court refused to allow Dr. Ernest Neighbor to testify as an expert witness because he was not identified in an interrogatory answer or the plaintiff's witness list as an expert. The trial court would have allowed Dr. Neighbor to testify as a "fact" witness. When faced with the limitation of testimony to his care and treatment of plaintiff, the plaintiff opted to not call Dr. Neighbor at all.

The record on appeal indicates that defendant properly sought discovery through interrogatories to the expert witnesses plaintiff intended to call at trial. Under K.S.A. 60-226(b)(4) (A)(i), the identity of the expert, the subject matter of the expert's testimony, the substance of the facts and opinions the expert is expected to testify to, and the grounds for each opinion are all discoverable. In plaintiff's response to one of defendant's interrogatories, defendant was referred to the plaintiff's witness list in which Dr. Neighbor was listed but was not identified as an expert witness. That interrogatory and answer read as follows:

"16. Pursuant to K.S.A. 60-226, please identify each person (name and address) whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, and state the substance of the facts and opinions as to which the expert is expected to testify and a summary of the grounds of each opinion.

"ANSWER: *See Plaintiff's Witness List filed herein.* (Emphasis supplied.)

"At this time, plaintiff would state that she expects to call all treating physicians of plaintiff, who will testify as to the contents of all medical records and/or their care and treatment of plaintiff. Defendant has previously been supplied medical authorizations to obtain said medical records which contain the substance and opinions as to which said experts are expected to testify.

"Plaintiff expects said experts to state that the injuries sustained involving the cervical spine are of a chronic nature and plaintiff can be expected to have future problems with these injuries. Plaintiff has not objected to defendant's attorney deposing any of these experts to obtain any information that might not be in the medical records.

"In addition, plaintiff would state that she will be evaluated by Dr. Stanley Butts, a clinical psychologist, and that his report will be made available to defendant and/or defendant may wish to depose Dr. Butts and if so, plaintiff will not object.

"Plaintiff may also call any or all of the persons attending plaintiff in her hospitalizations or any of her physical therapy outpatient visits for shots or otherwise. These persons are listed in the hospital records produced heretofore by plaintiff."

Obviously plaintiff's answer to the written interrogatory leaves a lot to be desired. The defendant, however, knew that plaintiff intended to call "Dr. Ernest H. Neighbors, [*sic*] M. D." as a witness. Before trial, plaintiff listed 23 numbered witnesses. Twelve of those were experts in the medical field. They were listed consecutively, and Dr. Neighbor was the 12th medical expert listed. Defendant was obviously not deceived. In defendant's opening statement (made the day before the court's ruling that Dr. Neighbor could not give an expert opinion), reference was made to Dr. Neighbor's seeing the plaintiff.

A trial judge has discretion in this area. Here the trial judge did not find that defendant had been misled or that plaintiff had attempted to mislead defendant. The trial judge clearly has authority to curb discovery abuses and to see that a fair trial is conducted.

Based on the record before us, we are of the opinion the trial court abused its discretion in limiting Dr. Neighbor's testimony. We are unable to say Dr. Neighbor's testimony was cumulative. With the result reached by the jury in this case, we cannot say the exclusion of Dr. Neighbor's testimony was not prejudicial. The trial court had effective options available other than excluding the expert testimony. Those options ranged from imposing sanctions on plaintiff's attorney to allowing defendant to interview or depose Dr. Neighbor prior to his being called.

The remaining issue in this case involves the admissibility of test material. In addition to the physical examination and diagnostic tests conducted on the plaintiff, Dr. Prostic, the orthopedic surgeon employed by the defendant, administered the Minnesota Multiphasic Personality Inventory (MMPI) test. The MMPI is a psychological test in which the examinee responds with a true or false answer to a series of over 500 statements. After the test was administered, Dr. Prostic sent the plaintiff's answer sheet to Western Psychological Services (WPS) where it was scored and interpreted by computer. WPS then mailed a computer printout back to Dr. Prostic which contained one page of evaluation or interpretation of the plaintiff's profile. Two pages of the report were devoted to scales and scores, two pages reproduced selected inventory statements and the plaintiff's corresponding response, and the balance of the report consisted of each numbered statement from the MMPI test and plaintiff's answer.

Defendant's counsel sought to admit the computer printout into evidence through Dr. Prostic. Plaintiff timely objected to its admission on the grounds of hearsay and lack of proper foundation. The trial judge overruled the plaintiff's objection and admitted the MMPI computer-interpreted printout. The basis for the trial judge's ruling is not apparent from the record.

There is little doubt that evidence in the form of a computer printout may constitute hearsay and is inadmissible unless it qualifies under one of the exceptions to the hearsay rule. *United States v. Ruffin,* 575 F.2d 346, 355-56 (2d Cir. 1978). The most frequently applied exception to overcome the hearsay rule and gain admissibility is the "business records" exception, K.S.A. 60-460(m). Much of the report is not simply a compilation or storage of information or data supplied by the plaintiff. Computer-generated evidence in the form of computer printouts such as bank statements is a common example of the latter. The case law pertaining to computer-generated evidence addresses the admissibility of computer printouts which usually involve the storage of data or information as a record-keeping process. This generally explains why computer evidence ordinarily qualifies under the business records exception. See, *e.g., United States v. Miller,* 771 F.2d 1219 (9th Cir. 1985); *United States v. Croft,* 750 F.2d 1354 (7th Cir. 1984); *King v. State,* 222 So. 2d 393 (Miss.

1969); *Brown v. J. C. Penney Co.*, 297 Or. 695, 688 P.2d 811 (1984); *State v. Bradley*, 17 Wash. App. 916, 567 P.2d 650 (1977). See generally Annot., Admissibility of Computerized Private Business Records, 7 A.L.R. 4th 8. In our case, however, the printout is not simply a compilation of data supplied by plaintiff. The analysis or interpretative summary makes the computer the declarant of the hearsay evidence.

K.S.A. 60-460(m) provides:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

. . . .

"Writings offered as memoranda or records of acts, conditions or events to prove the facts stated therein, if the judge finds that (1) they were made in the regular course of a business at or about the time of the act, condition or event recorded and (2) the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness." K.S.A. 60-460(m).

The analysis portion of the MMPI computer printout report does not qualify under this hearsay exception. Dr. Prostic testified that he routinely used the MMPI test to aid him in the diagnosis and evaluation of a patient. He also indicated that the MMPI was recognized in the practice of orthopedic surgery as an additional diagnostic tool. However, not being a trained psychologist, Dr. Prostic did not score the MMPI tests he administered to patients; he mailed the completed tests into WPS where the patients' responses were evaluated and interpreted by computer. Hence, the computer printout does not qualify as a writing made in the regular course of Dr. Prostic's business. It would seem to be more appropriately a business record of the testing service. Dr. Prostic's function is limited to transferring or providing the data to be analyzed; he is totally unqualified to provide the necessary foundation showing the computer printout's accuracy and trustworthiness. In essence, Dr. Prostic is not the proper foundation witness. While the necessary foundation for the admission of computer evidence varies from jurisdiction to jurisdiction, there is little, if any, foundation laid by Dr. Prostic in this case. See Annot., 7 A.L.R. 4th 8, and cases cited therein; Roberts, *A Practitioner's Primer on Computer-Generated Evidence*, 41 U. Chi. L. Rev. 254 (1974).

Expert testimony founded upon hearsay is inadmissible and

contrary to K.S.A. 60-456(b). Such opinions are not based on information perceived or personally known or made known to the expert. *Mesecher v. Cropp*, 213 Kan. 695, 518 P.2d 504 (1974); *In re Watson*, 5 Kan. App. 2d 277, 615 P.2d 801 (1980).

Our situation is analogous to those where the physician-witness's testimony is founded upon a report and findings made by a different doctor. The only difference in our case is that the report and findings were not made by a person but a computer. The same result should obtain. As noted in *Mesecher*, this procedure should not be allowed to "bootleg" into evidence inadmissible findings without the benefit of cross-examining the author of the report. In *Mesecher*, the plaintiff was examined by defendant's expert, a neurosurgeon. Defendant's expert prepared a written report of his findings based upon his diagnosis and examination of plaintiff. Instead of calling the neurosurgeon as a witness and subjecting him to cross-examination, defendant's counsel sought to have plaintiff's treating physician testify as to the contents of the report and the neurosurgeon's findings. The neurosurgeon's report had made its way into the file of the treating physician.

Even more on point is *State v. Howard*, 405 A.2d 206 (Me. 1979), a case dealing with an MMPI evaluation report. In *Howard*, the accused had taken the MMPI test. A subjective evaluation of the defendant's profile was prepared by a Mr. Citrin, who had interpreted the accused's personality based upon his responses to the MMPI. Defendant's counsel attempted to admit Citrin's evaluation report into evidence through the treating phychiatrist. However, defendant failed to lay a proper foundation through the psychiatrist to admit the report.

We conclude the trial court erred in admitting the report into evidence and permitting Dr. Prostic to testify concerning the test results.

Reversed and remanded for a new trial.