261 N.J. Super. 648 (1993)
619 A.2d 671
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANK VERGILIO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 5, 1993.
Decided February 1, 1993.
*650 Before Judges ANTELL, DREIER and SKILLMAN.
A. Charles Peruto, Jr., attorney for appellant (Frank M. Spina, II, on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Carol M. Henderson, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals from convictions of two counts of second-degree aggravated assault, N.J.S.A. 2C:12-1b(1); third-degree aggravated assault, N.J.S.A. 2C:12-1b(2); two counts of kidnapping, N.J.S.A. 2C:13-1b(1) or (2); second-degree attempted kidnapping, N.J.S.A. 2C:5-1 and 2C:13-1b(1) or (2); two counts of a lesser-included offense of attempted criminal sexual contact, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:14-3b; and assault, N.J.S.A. 2C:12-1a. He was sentenced to an aggregate sentence of sixty years with a fifteen-year parole disqualifier. The offenses grew out of defendant's attacks upon three women during the evening of January 10, 1990 and the morning of January 11, 1990. Defendant claimed inconsistent alibis at the time of his original arrest and at trial.
Defendant raises three issues on appeal, all of which relate to procedural issues:
POINT I
The Lower Court erred by conducting an ex-parte interrogation of a juror, in not disclosing the contents thereof to counsel, and not declaring a mistrial; but instead requiring the juror to continue in his deliberations for two additional days even though the juror was adamant that he could not agree in the verdict and that the other jurors were overcoming his will.
POINT II
The Lower Court erred in refusing the defendant's request to speak with his own attorney during a recess in the proceeding called during the course of his cross-examination.

*651 POINT III
The Lower Court erred by visibly smiling during the testimony of the defendant's key alibi witness where the defendant relied solely upon a defense of Alibi; such conduct expressing the Court's disbelief of the testimony whereby infringing upon the jury's function as finder-of-fact.
The facts giving rise to the first issue, involving a recalcitrant juror, are unusual. During the first day of deliberations, the jurors submitted two notes asking to have certain portions of testimony read back to them. A third note was submitted, stating that "a juror" wanted to hear certain parts of the testimony. After the testimony was read back, juror W. addressed the court, saying: "Can I ask you a question?" The court explained that the question would have to come after the jury went back to the jury room. The jury then submitted a note stating that "one juror" wanted to see certain testimony in writing. The judge brought the jury back and explained that testimony was not in written form, but that it could be read back.
At the conclusion of the first day of deliberations, juror W. contacted a sheriff's officer and asked to see the judge. The judge tried to contact the lawyers, but found that the defense lawyer had left the courtroom. Juror W. had the following discussion with the judge:
JUROR W.: ... I am mentally upset right now and I've been mentally upset for the past day and previous day.
....
To reach a decision it has to be unanimous and I feel at this point we can never reach a decision.
....
It's just that I'm getting a lot of peer pressure and stress to go with the other 11 jurors' ways and I feel that I should try to follow the law which you put down and which I interpreted it the way it should be.
....
And because of that I'm receiving a lot of stress from all the jury members to change my mind. And I feel that I cannot change. I don't think it would be fair to the defendant, the prosecutor, that I change my mind just because other people want me to.
....
THE COURT: Sir, I don't want you to indicate to me how you are going or they are going.
JUROR W.: I'm just saying they are trying to change me [sic] mind.

*652 THE COURT: Sir, part of the deliberations is the free exchange between you 
JUROR W.: (Interposing) There is no free exchange.
....
That's the problem.
....
I'm becoming very mentally sick ... I think that another day  another few days I will be very, very, very highly stressed and I don't feel that it's fair.
The foreman will not submit the questions I ask. I thought you said that anyone can ask the foreman to submit something. They will not submit what I want them to. They make fun of me when I ask. But, when re-read they were right. Then they won't let me ask more.
There is [sic] conflicting facts I wanted  I say I'm right; they say they are right.... And when re-read I'm right and they get even more angry.
Now they change the questions I ask.
THE COURT: Again I don't want to tell you in any way to give up your convictions, sir, because that is not what the law is.
....
The law is that you have every right to stand by your convictions if you believe that you are right and you believe they are wrong.
....
However, sir, as I have said before you should consider other people's opinions and make your own decision.
Juror W. concluded by saying, "They have promised not to discuss the case anymore and just sit until I change my mind... Fine we'll sit. We'll sit."
The next day, Friday, the judge, off the record, informed both lawyers about his discussion with juror W. A transcript of the proceedings with juror W. was not then provided to defense counsel, however. A year later, when this matter was already on appeal, the in-chambers conversation with the juror was reconstructed on the record with counsel present. Defense counsel had not objected to the fact that the judge met with the juror and did not seek a mistrial.
The jury was brought into the courtroom that Friday morning and instructed "to give respectful attention to the views of others." Late Friday afternoon at about 4:22 p.m., the jury returned and informed the judge in a note that: "There is a juror that feels he cannot reach a fair and just decision any longer." The court then had the following dialogue with the forelady:

*653 THE COURT: ... What I am saying to you, as a jury, is the jury able to at this time reach a unanimous verdict as to any count?
....
THE FORELADY: No.
....
THE COURT: Do the members of the jury feel that if they are given any more time they would be able to reach a unanimous verdict?
Do you feel you need to discuss that?
THE FORELADY: Yes.
The jury left the courtroom and then returned after about twenty minutes and informed the judge that with additional time the jury thought it would be able to reach a verdict. The court instructed the jury to stop deliberating and to return on Monday morning, March 13, 1991. The court officer told the judge that Mr. W. wanted to say something. Mr. W. blurted out that the foreperson "won't write down my question." Rather than merely asking the juror what his question was, the judge again instructed Mr. W. to communicate with the court by way of notes submitted by the foreperson. Mr. W. tried to remain behind as the jury retired, but was told to accompany the rest of the panel. Defense counsel did not seek a mistrial at this point.
The following Monday, the jury convened at about 9:25 a.m. By 12:30 p.m., the jury had reached its unanimous verdict of guilty.
In Rushen v. Spain, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983), the United States Supreme Court held that an ex-parte discussion between a juror and the trial judge where "[t]hey did not discuss any fact in controversy or any law applicable to the case" did not constitute a basis to reverse the conviction. 464 U.S. at 121, 104 S.Ct. at 456, 78 L.Ed.2d at 275. Rejecting appellant's argument that an unrecorded ex-parte communication can never be harmless error, the Court in Rushen concluded that such a rule would "[ignore] these day-to-day realities of courtroom life...." 464 U.S. at 119, 104 S.Ct. at 456, 78 L.Ed.2d at 273.
*654 Here, the trial court did not act improperly in speaking with the distraught juror who asked to see the judge, saying he was upset. The defense lawyer had already left for the day, and the judge felt that it would be improper to include the prosecutor when defense counsel was not present. A court reporter properly recorded the conversation with the juror.
It is somewhat unclear from the reconstructed record precisely what information the judge communicated the next day to defense counsel about the meeting with juror W. The judge stated in the reconstructed transcript that the first thing the next morning after speaking with juror W., he informed "both [defense counsel and the prosecutor] of exactly what transpired the evening before." (emphasis added). Defense counsel agreed that he was "fully aware of that situation." The prosecutor added that at conference with the court the next morning he and the defense lawyer "had been apprised of all the facts and circumstances surrounding" the meeting between the judge and juror W. (emphasis added). Defense counsel stated more specifically what it was that the judge told him about the meeting. He said "[The court] brought us into chambers, told me that juror W. was distraught."[1]
Assuming that defense counsel was aware of the particular stresses felt by juror W., it is difficult to understand defense counsel's reaction to how the trial court dealt with the note that came from the jury on Friday that "[t]here is a juror that feels he cannot reach a fair and just decision any longer." In his ex-parte discussion with the judge the day before, juror W. had said that "I think that another day  another few days I will be very, very, very highly stressed and I don't feel that it's fair." *655 If defense counsel was aware of that statement, he should have questioned the judge's decision to have the jury again determine whether it could reach a unanimous verdict with more time. Given his prior discussion with juror W., the judge at the very least should have issued a strong cautionary instruction before asking the jury whether further deliberation might produce a unanimous verdict, lest that question be interpreted by juror W. as coercive. Cf. State v. Pontery, 19 N.J. 457, 477, 117 A.2d 473 (1955) (in the present case, unlike in Pontery, there was no question of an improper inquiry into the current status of the vote, since juror W. had already revealed that he was the one holdout).
In the usual case, when a jury states that it cannot come to a unanimous verdict, it is appropriate for the trial court judge to ask whether the jury desires more time to deliberate. State v. Hunt, 115 N.J. 330, 380, 558 A.2d 1259 (1989), citing Lowenfield v. Phelps, 484 U.S. 231, 240, 108 S.Ct. 546, 552, 98 L.Ed.2d 568, 579 (1988) (approving such an inquiry). But this was not the usual case. There was not just a recalcitrant juror, there was a distraught juror who had apprised the court of significant unfair treatment. The state of facts on Friday, namely the explicit statements of juror W. that he still could not have his questions addressed to the court, and could not, as he tried to do, remain behind to talk to the judge when the rest of the jury retired, should have demonstrated to the judge that there was a coercive element to the court's direction that the jury continue its deliberations.
While it is possible that with strong curative instructions, the judge might have permitted some additional deliberation, it was error merely sending juror W. back to the jury room, without inquiry into his problem.[2] A verdict of eleven jurors, with the *656 vote of the twelfth coerced rather than convinced, is no verdict at all. We therefore must reverse this conviction and order a new trial, notwithstanding the volume of persuasive evidence against defendant.
Since there will be a retrial, we will but briefly comment on defendant's other two issues.
As noted earlier, the defendant testified at trial, claiming that at all the crucial times between January 10 and 11, 1990, he was with his cousin. At a point during defendant's cross-examination, the court told the jury to take a short break. After the jury left, the defendant said to the judge, "[M]ay I ask my counsel a question?" The court responded:
Sir, you are really not supposed to be talking to him during cross-examination until it is completed.
....
If you can just hold it until you are finished the examination then you can speak to him.
Defense counsel did not object and did not seek a mistrial. The break lasted approximately 20 minutes.
In Geders v. United States, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), the Court held that a trial court's order directing the defendant not to consult with his lawyer during a 17-hour overnight recess in the trial between his direct examination and his cross-examination constituted reversible error. 425 U.S. at 91, 96 S.Ct. at 1336, 47 L.Ed.2d at 601. New Jersey adopted the Geders rationale in State v. Fusco, 93 N.J. 578, 461 A.2d 1169 (1983).
In Perry v. Leeke, 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989), the Court concluded that the Geders rule did not apply to a 15-minute afternoon recess between defendant's direct and cross-examination. 488 U.S. at 284, 109 S.Ct. at 601, 102 L.Ed.2d at 635. The Court stated as follows:
[W]hen a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying.

*657 ....
[I]t is entirely appropriate for a trial judge to decide, after listening to the direct examination of any witness, whether the defendant or a nondefendant, that cross-examination is more likely to elicit truthful responses if it goes forward without allowing the witness an opportunity to consult with third parties, including his or her lawyer.
488 U.S. at 281-282, 109 S.Ct. at 600-01, 102 L.Ed.2d at 634-635.
While the New Jersey Supreme Court has not decided a case on the Perry set of facts, we adopted the Perry rule in State v. Carroll, 256 N.J. Super. 575, 607 A.2d 1003, certif. denied, 130 N.J. 18, 611 A.2d 656 (1992). There a short recess was taken during defendant's cross-examination. We concluded that the trial court's
power to maintain the status quo during a short recess should ... be recognized. Thus, defendant's right to counsel would not have been violated even if the court had directed that he not discuss his testimony with counsel during the short recess.
Id. 256 N.J. Super. at 593, 607 A.2d 1003, citing Perry v. Leeke, supra, 488 U.S. at 281-284, 109 S.Ct. at 600-02, 102 L.Ed.2d at 634-636. See also Horn v. Village Supermarkets, 260 N.J. Super. 165, 174-175, 615 A.2d 663 (App.Div. 1992). We find that in this situation defendant did not have a right to interrupt his testimony to consult with his attorney.
Defendant's last point concerns his claim that the judge expressed before the jury his belief concerning the credibility of witnesses. During the cross-examination of defendant's cousin, his alibi witness, defense counsel asked for a sidebar conference which he said should be held in the hallway. He told the judge that he had been smiling during the testimony and that "[i]t shows [sic] on the credibility of my witness who is the only alibi witness I have." The trial judge explained that "if anything ... [he was] smiling at the chart that [was] being drawn on the wall by the Prosecutor that is going all over the place *658 and I can't see where it is tying it in."[3] Defense counsel said he was not claiming that the judge was acting intentionally. The defense sought neither a mistrial nor even a curative instruction from the court.
Here, as in State v. Johnson, 159 N.J. Super. 26, 386 A.2d 1339 (App.Div. 1978), no immediate cautionary instruction was given after the trial judge allegedly smiled. However, the judge's charge made it clear that the jury was the ultimate judge of the credibility of the witnesses. The judge stated as follows:
It is your function to determine all questions of fact....
In discharging this function of your responsibility you are also sole judges of the credibility of the witnesses....
....
The court in its charge will not express any opinion concerning the evidence or testimony....
Thus the jury was clearly and properly told that it was the duty of the jury alone to resolve the issue of witnesses' credibility. The judgments of conviction are reversed, and the matter is remanded for a new trial.
NOTES
[1] That statement suggests that defense counsel may not then have been made aware that juror W. said that he felt that he was under a lot of pressure from the other jurors to change his mind; that the foreman would not submit his questions; that he felt the others were making fun of him; and that the others had promised not to deliberate any more, but just to sit until he changed his mind. We will, however, take counsel at his word that he was fully aware of the situation.
[2] Given the unusual situation faced by the court, the juror could simply have been asked to state his question. Further, the jurors could have been strongly directed concerning their duty to participate in good faith discussions with each other.
[3] The trial judge was referring to an elaborate chart made while the cousin testified concerning the peripheral matter of a truck that he drove, allegedly with the defendant as a passenger, to the motel.