895 A.2d 1207 (2006)
385 N.J. Super. 45
STATE of New Jersey, Plaintiff-Respondent,
v.
George TILGHMAN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 20, 2006.
Decided April 25, 2006.
*1209 Yvonne Smith Segars, Public Defender, for appellant (Alan I. Smith, Designated Counsel, and on the brief.)
Joseph Bocchini, Jr., Mercer County Prosecutor, for respondent (Dorothy Hersh, Assistant Prosecutor, of counsel and on the brief.)
Before Judges CUFF, LINTNER and PARRILLO.
The opinion of the court was delivered by
PARRILLO, J.A.D.
Following a retrial by jury on remand from our reversal of his earlier convictions, State v. Tilghman, 345 N.J.Super. 571, 786 A.2d 128 (App.Div.2001), defendant, George Tilghman, was again convicted of a charge of second-degree robbery, N.J.S.A. 2C:15-1 and a related charge of third-degree burglary, N.J.S.A. 2C:18-2a(1). He was sentenced on the robbery charge to an extended term of twenty years subject to an eight-year term of parole ineligibility, and on the burglary charge, to a concurrent ten-year term with a five-year parole bar. Required statutory penalties were also imposed. Defendant appeals, and we affirm the conviction, but remand for resentencing.
The gravamen of the crimes charged against defendant arose out of the robbery, in her home, of the seventy-four year-old African-American victim, during the late evening of December 14, 1998. According to the State's proofs, she had arrived home at about 10:00 p.m., parked her car in her driveway, gathered her belongings and entered her house. When she returned outside to retrieve her briefcase, she was accosted from behind by a stranger. Her assailant pushed her into the house, and then on her back. He stole her pocketbook, containing her credit cards, medical insurance cards and cash, and fled when he heard the alarm of her car, which she was able to activate, as she was still holding her car key. Before he fled, however, he took her car key as well.
The entire incident endured for about eight to ten minutes, during which the victim looked directly at the intruder's face. She also was able to observe him initially when he approached her on the front porch, which was well lit and further illuminated by the lights in her living room and bedroom.
When the police arrived about five minutes later, the victim gave them a description of her assailant. She described him as a black man with a slight mustache, who was wearing a dark-hooded jacket up over his head with a logo over the left breast. Believing that defendant, who lived only *1210 three blocks away, fit that description, Detective James Colanduoni included his picture in a photographic array consisting of eight photographs that he showed the victim at her home two days later, on December 16, 1998. The victim identified defendant from this array. When she observed defendant's photograph, among the others, she "took [her] hand and closed off the top of his hair line and all and just get his face, his eyes and his nose and his mouth."
Defendant was arrested two days later, on December 18, 1998, wearing the same type of blue-hooded sweatshirt the victim described her assailant as wearing when he robbed her. Three days later, on December 21, 1998, Colanduoni again met with the victim, this time at police headquarters, where she gave a formal statement describing the intruder as "a medium black male, medium skinned black male in his 20s . . . . approximately 5 foot 11 inches tall." At the time she was shown a photograph of defendant wearing the blue-hooded jacket taken at the time of his arrest and she immediately recognized him as the person who robbed her on December 14, stating: "That's him, that's the man that robbed me. Only difference is that the hood was pulled down more on his face and the zipper zipped up underneath his neck." According to Colanduoni, the victim "went into about the jacket, the hood, the zipper and she zeroed right in on the logo and said: That logo is  that design is exactly what he was wearing that day, the day he robbed me."
Defendant produced no evidence, his defense resting on the assertion of mistaken identification by the victim. As noted, the jury convicted him of the offenses charged.
On appeal, defendant raises the following issues:
I. THE TRIAL COURT ABUSED ITS DISCRETION AND DEPRIVED THE DEFENDANT OF THE OPPORTUNITY TO ESTABLISH THAT THE OUT-OF-COURT IDENTIFICATION WAS UNRELIABLE.
II. THE TRIAL COURT ABUSED ITS JUDICIAL DISCRETION AND PREJUDICED THE DEFENDANT'S SIXTH AMENDMENT RIGHTS TO AN IMPARTIAL JURY AND TO EFFECTIVE ASSISTANCE OF COUNSEL BY LIMITING AND INTERRUPTING DEFENSE COUNSEL'S OPENING STATEMENT.
III. THE TRIAL COURT COMMITTED PLAIN ERROR IN FAILING TO GIVE A CAUTIONARY INSTRUCTION TO THE JURY AFTER DETECTIVE COLANDUONI TESTIFIED THAT HE TOOK "MUG SHOT" PHOTOGRAPHS OF THE DEFENDANT (Not Raised Below).
IV. IMPOSITION OF THE EXTENDED BASE TERM OF TWENTY (20) YEARS WITH EIGHT (8) YEARS OF PAROLE INELIGIBILITY ON THE DEFENDANT'S CONVICTION FOR ROBBERY ON COUNT ONE, AND THE IMPOSITION OF THE CONCURRENT TEN (10) YEAR BASE TERM WITH FIVE (5) YEARS OF PAROLE INELIGIBILITY ON THE DEFENDANT'S CONVICTION FOR BURGLARY ON COUNT TWO, WERE MANIFESTLY EXCESSIVE AND VIOLATED THE DEFENDANT'S CONSTITUTIONAL RIGHTS UNDER BLAKELY V. WASHINGTON AND STATE V. NATALE.

(A)
THE TRIAL COURT'S FINDINGS WITH REGARD TO THE AGGRAVATING FACTORS *1211 PRESENT CANNOT BE SUPPORTED.
(B)
THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING THE DEFENDANT TO AN EXTENDED TERM AS A PERSISTENT OFFENDER.
(C)
IMPOSITION OF THE DISCRETIONARY EXTENDED TERM VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHTS TO A TRIAL BY JURY AND DUE PROCESS OF LAW UNDER BLAKELY V. WASHINGTON AND STATE V. NATALE.

(D)
IMPOSITION OF A BASE EXTENDED TERM IN EXCESS OF THE THEN-EXISTING PRESUMPTIVE EXTENDED TERM SENTENCE VIOLATES STATE V. NATALE.

(E)
IMPOSITION OF THE TEN (10) YEAR BASE TERM ON THE DEFENDANT'S CONVICTION FOR BURGLARY ON COUNT TWO WAS ILLEGAL BECAUSE IT EXCEEDED THE MAXIMUM FIVE (5) YEAR BASE TERM FOR A THIRD DEGREE CRIME.
(F)
THE TRIAL COURT FAILED TO ARTICULATE ITS REASONS FOR IMPOSING A TEN (10) YEAR PERIOD OF PAROLE INELIGIBILITY ON COUNT ONE AND A FIVE (5) YEAR PERIOD ON COUNT TWO.
[At the court's direction, the discussion of issues other than that raised in the second point has been omitted from this published decision.]

(ii)
Defendant next contends that the trial judge prejudiced his Sixth Amendment rights to an impartial jury and to effective assistance of counsel by limiting and interrupting defense counsel's opening statement. This contention must be viewed in full factual context.
At the outset of trial, defense counsel indicated his opening statement would last over one hour, to which the trial judge responded:
No, it would not be more than an hour and we will not talk about this for an hour. This is not the purpose of opening. No. I'm limiting it. I want you to limit it to a half hour for opening. If you can't do it, that's your problem.
After a brief exchange, the judge ruled:
The record will reflect, regarding the ability of counsel to give extraordinary openings, I refer you gentlemen to Murin [v.] Frapaul Const[r.] Co[.] affirming trial judge's exercise of discretion in, limiting summations to twenty minutes; and that Rule 1:7-1(1) gives the trial judge an exercise of discretion in, I guess, making a proportionate judgment as to how much time might be spent on a case.
In this case we have a case that's, I believe, three witnesses for the State, and apparently Mr. Tilghman in his absence will not be testifying. In any event, I'm limiting both to 20 minutes maximum in your opening.
The State completed its opening statement in the allotted time without incident. Defense counsel, on the other hand, was not as successful. As he was describing to the jury the series of events surrounding defendant's arrest, the court interrupted, and stated "Two minutes." Counsel continued *1212 in his opening statement when the court again interrupted, and the following exchange took place:
THE COURT: Excuse me, [counsel]. This is not summation. Could you wrap it up in one minute, please.
[DEFENSE COUNSEL]: No, it will take a little longer because other evidence I'd like to comment on.
THE COURT: I understand. This is not the summations. This is opening. This is a road map. It's not your testimony. It's the testimony from the stand and any facts that you recite to the jury must mesh. They're not facts as evidence. You have two minutes left. Please try to wrap it up.
[DEFENSE COUNSEL]: I'll do my best.
THE COURT: Give these jurors a break, huh, please. Thank you.
[DEFENSE COUNSEL]: I ask you excuse the jurors for lunch and that I complete my opening after.
THE COURT: Continue. You have two minutes, please. This isn't a filibuster.

[DEFENSE COUNSEL]: Nor is it a rush to judgment.
THE COURT: No, nor is it a rush to judgment. Two minutes.
[Emphasis added.]
Defense counsel continued his opening address to the jury when, within a minute, the judge once again interrupted:
THE COURT: Excuse me, [defense counsel], I'm going to say this again: This is not summation. This is opening statement whereby you introduce not facts and testimony but you hope to produce or what you will produce. You can do all this on your summation. That's where you do the comments on the evidence. There is no evidence before the jury yet. Your statements of fact, your comments are not evidence.
I'm telling the ladies and gentlemen of the jury the statements of fact [defense counsel] presents to you now even as the Prosecutor presented, they're not facts. You get the facts from the stand. What you have are the observations of the attorneys and as an advocate and he is making representations to you. We don't have the facts yet.
[Defense counsel], I'm going to kindly ask your indulgence to wrap up your opening.
[DEFENSE COUNSEL]: Was that out of the two minutes or is that I still have [two] minutes?
THE COURT: You mean in addition to two minutes? Would you like two more minutes if you can do that?
[DEFENSE COUNSEL]: Sure.
THE COURT: You have two more minutes.
[DEFENSE COUNSEL]: Thank you.
At the conclusion of counsel's opening, the judge remarked: "the record will reflect 32 minutes despite my limitations", and went on to address the jury:
Ladies and gentlemen, I feel it necessary at this point in time to once again advise you that the facts will come from this stand. Nowhere else. The representations of the Prosecutor as to what he believes the facts are, the representations of [defense counsel] what he believes the facts are fail in your determination of what the facts are. You are the judge of the facts.
It is against this backdrop that we now consider defendant's claim of prejudice.
New Jersey has a long-standing tradition of allowing the trial court "wide discretion" in supervising the conduct of a trial. Sullivan v. State, 46 N.J.L. 446, 447 (Sup.Ct.1884), aff'd, 47 N.J.L. 151 (E. & A. 1885). Indeed, our rules vest the courts with broad discretion over procedural matters. R. 1:1-2. Such discretion allows the court to "exercise a right to *1213 control the discussions of counsel. . . . And it [is] equally obvious that the right to regulate the time which counsel shall occupy must be the subject of judicial discretion." Sullivan, supra, 46 N.J.L. at 447-48. This is deemed essential so "that there should be some limitation other than the caprice of the speaker to prevent an unreasonable consumption of public time and delay in the transaction of the business of the courts, and inconvenience and expense. . . ." Id. at 448.
As part of this discretionary power, it is generally recognized that courts may limit the amount of time allowed for opening and closing arguments. State v. Speth, 324 N.J.Super. 471, 473, 735 A.2d 1200 (Law Div.1997), aff'd, 323 N.J.Super. 67, 731 A.2d 1232 (App.Div.1999); Murin v. Frapaul Constr. Co., 240 N.J.Super. 600, 613, 573 A.2d 989 (App.Div.1990). In Sullivan, the Court of Errors and Appeals, affirming the lower court, held:
[I]t must necessarily rest in the discretion of the court in which the trial takes place to limit the time to be occupied by counsel in addressing the jury, and unless that discretion is so exercised as practically to deny to the accused his constitutional right to have the assistance of counsel in his defen[s]e, it is not error.
[47 N.J.L. at 151.]
Of course, ultimately this discretion must be exercised "to insure a fair trial." Speth, supra, 324 N.J.Super. at 474, 735 A.2d 1200; see State v. Green, 86 N.J. 281, 290, 430 A.2d 914 (1981); Webber v. McCormick, 63 N.J.Super. 409, 422, 164 A.2d 813 (App.Div.1960). The need to control the conduct of the proceedings must be carefully balanced against "`the necessity of judicial self-restraint and the maintenance of an atmosphere of impartiality.'" State v. Ray, 43 N.J. 19, 25, 202 A.2d 425 (1964) (quoting Band's Refuse Removal, Inc. v. Borough of Fair Lawn, 62 N.J.Super. 522, 548, 163 A.2d 465 (App.Div.), certif. denied, 33 N.J. 387, 164 A.2d 849 (1960)). A defendant's Sixth Amendment rights to an impartial jury and effective assistance of counsel act as a qualifying factor limiting the court's otherwise broad superintending control over the presentation of arguments at trial. Time allotted to counsel "must be reasonable and of such length as not to impair the right of" a criminal defendant to present his defense to the jury. See Michael R. Flaherty, Annotation, Propriety of Trial Court Order Limiting Time for Opening or Closing Argument in Criminal Case-State Cases, 71 A.L.R.4th 200, § 2a (2005).
A trial court's discretionary power to limit the duration of counsel's opening statement must necessarily be considered in light of its nature and purpose. Although the applicable court rule addresses neither, Rule 1:7-1, our common law has filled in the gap:
[A]n opening statement should set forth only a succinct statement of what a party proposes to prove. The jury, having been given an overview of the State's and defendant's positions, will understand the nature of the action and be able to follow the evidence more intelligently.
[State v. Stamberger, 209 N.J.Super. 579, 581, 508 A.2d 1140 (Law Div.1985) (quoting State v. Lynch, 79 N.J. 327, 336, 399 A.2d 629 (1979)).]
In other words, "[t]he fundamental purpose. . . is `to do no more than inform the jury in a general way of the nature of the action and the basic factual hypothesis projected, so that they may be better prepared to understand the evidence.'" Passaic Valley Sewerage Comm'rs v. Geo. M. Brewster & Son, Inc., 32 N.J. 595, 605, 161 A.2d 503 (1960) (quoting Farkas v. Bd. of Chosen Freeholders of Middlesex, 49 N.J.Super. 363, 367-68, 139 A.2d 779 (App. *1214 Div.1958)); see also Amaru v. Stratton, 209 N.J.Super. 1, 15-16, 506 A.2d 1225 (App.Div.1985); Manzi v. Zuckerman, 157 N.J.Super. 63, 66, 384 A.2d 541 (App.Div. 1978); Reilly v. Spiegelhalter, 100 N.J.Super. 276, 281, 241 A.2d 665 (App.Div.1968). Overall, when presenting an opening statement, "[c]ounsel must be summary and succinct." Passaic Valley Sewerage Comm'rs, supra, 32 N.J. at 605, 161 A.2d 503. Counsel is also cautioned that the "[p]roposed evidence should not be detailed," and when evidence is addressed, it should appear as little more than "a fairly indefinite" outline. Ibid. Moreover, an opening statement cannot either "be argumentative or have any of the attributes of a summation," and counsel must refrain from discussing issues or facts that he knows are not legally admissible or able to be factually proven. Ibid.[1]
Although there is scant case law in our State, see State v. Goldberg, 3 N.J. Misc. 984, 985, 130 A. 437 (Sup.Ct.1925), aff'd sub nom., State v. Druin, 102 N.J.L. 725, 132 A. 924 (E. & A.1926), other jurisdictions have upheld decisions limiting opening statements to thirty minutes or less. See Yeldell v. State, 100 Ala. 26, 14 So. 570 (1893) (upholding fifteen-minute time limit for each side because there were few witnesses, simple facts that were in slight conflict, and plain and familiar issues of law); People v. Tock Chew, 6 Cal. 636 (1856) (affirming defendant's grand larceny conviction and upholding time limits of thirty minutes or less because issues did not appear numerous or complicated and the issues involved in the case could have been fully presented in allocated time); People v. Broom, 200 A.D.2d 515, 606 N.Y.S.2d 687 (N.Y.App.Div.) (holding that defense counsel's opening statement was not improperly curtailed), appeal denied, 83 N.Y.2d 964, 616 N.Y.S.2d 17, 639 N.E.2d 757 (1994); Bates v. Newman, 121 Cal.App.2d 800, 264 P.2d 197 (1953) (holding that there was no abuse of discretion when court limited opening statements in negligence action to thirty minutes because not only did the judge make a statement to the jury explaining the nature of the case, but also counsel agreed it was fair and in need of no further explanation); West v. Martin, 11 Kan. App.2d 55, 713 P.2d 957 (holding that ten-minute openings per side were acceptable in a personal injury case), petition denied, 239 Kan. 695 (1986); Butler v. Flo-Ron Vending Co. 383 Pa.Super. 633, 557 A.2d 730 (1989) (upholding openings limited to twenty minutes in action by employee falsely accused of burglarizing employer's office even though the time was eroded by lengthy discussions, objections and improper comments), appeal denied, 523 Pa. 646, 567 A.2d 650 (1989); May v. Hahn, 22 Tex.Civ.App. 365, 54 S.W. 416 (1899) (holding that there was no reversible error when court limited opening and closing statements to thirty minutes in personal injury action, however, the time limitation may have had a harmful effect by causing *1215 the jury to think that the court regarded the damages claim to be of little consequence).
On the other hand, courts have frequently overturned verdicts in cases where opening statements were unduly restricted. Maleh v. Fla. E. Coast Props., Inc., 491 So.2d 290 (Fla.Dist.Ct.App.1986) (finding that opening is important because the jury forms its first and lasting impression and that allotting five minutes for opening and fifteen minutes for closing in a personal injury case with sixteen witnesses and a two-and-one-half day trial is unreasonable); McLean v. State 32 Tex.Crim. 521, 24 S.W. 898 (1894) (taking into consideration the number of testifying witnesses in adultery case and the conflicting nature of their testimony, court held a seventeen-minute limit on argument improper); Jerrell v. Norfolk & Portsmouth Belt Line R.R. Co., 166 Va. 70, 184 S.E. 196 (1936) (stating that counsel in personal injury case could not adequately open and close their arguments in thirty minutes because the questions were complicated, and noting that the action by trial court seemed calculated to give the jury the impression that the court thought little of the plaintiff's case).
Given that defendant's right to be heard on opening argument is not without qualification or limitation, what is required to assure fairness obviously will vary with the circumstances. Specifically the propriety of a trial court's exercise of its discretion in limiting the time for arguments of counsel depends on many factors, including, most significantly, "the complexity of the case, the number of witnesses who testified, or the length of the trial. . . ." Flaherty, supra, 71 A.L.R.4th 200 at § 2a. Typically, the complexity of the overall case, in turn, depends upon "the complexity of evidence, issues, or jury instructions, as well as the amount of evidence, the length of the record, conflicts in evidence or testimony, and the like." Ibid.
Considering the particular circumstances of this case, we are persuaded that the trial court did not abuse its discretion in placing a time restriction on counsel's opening. In the first place, the court applied the limitation evenly, to both prosecution and defense, and even allowed defense counsel extra time within which to complete his statement. The facts and legal issues in the case were straightforward and not complex. It was a short trial, two days in duration. Only three witnesses testified for the State, and none for the defense. There was no confusion of the facts and the conflicting theories of the prosecution and defense were easily understood. Consequently, the jury charge was uncomplicated. Significantly, no time limits were placed on summations and, in conjunction with counsel's opening, defendant was heard, through counsel, on the whole case and his defense of misidentification. Most telling on this score, defendant has not established the manner in which defense counsel's presentation was prejudiced by the temporal restriction imposed by the trial court. Nor has he identified any material points or issues which counsel was unable to cover on account of the time limit. In fact, our own review of the record reveals none. On the contrary, we are satisfied that the court's time limit did not impair defendant's ability to make a meaningful presentation to the jury in accordance with the traditional purpose that an opening statement is designed to achieve. Quite simply, defendant was not deprived of his Sixth Amendment right to the effective assistance of counsel.
Accordingly, our concern here is not with the imposition of a time limit, but rather with the manner in which the trial judge enforced his restriction. When defense counsel indicated he needed more time, the judge remarked: "give these jurors a break" and "this isn't a filibuster." *1216 Granted, within the greater context, the judge may only have been attempting to hold counsel within the permissible boundaries of an opening statement; however, these remarks in the presence of the jury were entirely inappropriate, whatever the motivation.
The potential for prejudice inhering in these comments should be quite obvious. Such official expressions of displeasure or disapproval may convey to the jury the belief that defense counsel was somehow acting improperly, disrespectfully, or deceptively; or worse yet, give the impression that the judge has an opinion of defendant's guilt or innocence. State v. Guido, 40 N.J. 191, 208, 191 A.2d 45 (1963); State v. Christie, 91 N.J.Super. 420, 424, 221 A.2d 20 (App.Div.1966). After all, the capacity of a judge to influence or affect a jury, even subtly and indirectly, is great. State v. Vergilio, 261 N.J.Super. 648, 657-58, 619 A.2d 671 (App.Div.), certif. denied, 133 N.J. 443, 627 A.2d 1147 (1993). "The trial judge is an imposing figure." Guido, supra, 40 N.J. at 208, 191 A.2d 45. Because the judge occupies a high position, the jury can be easily influenced by the slightest suggestion coming from the court. Ibid.; see also State v. Hamilton, 240 Kan. 539, 731 P.2d 863, 868-69 (1987). As "a symbol of experience, wisdom, and impartiality," Guido, supra, 40 N.J. at 208, 191 A.2d 45, jurors have a natural tendency to look to the trial judge for guidance and may find it even where it is not intended. See State v. Zwillman, 112 N.J.Super. 6, 20, 270 A.2d 284 (App.Div.1970), certif. denied, 57 N.J. 603, 274 A.2d 56 (1971).
It is, therefore, imperative that the judge conduct himself or herself with the utmost caution in order that the unusual power he or she possesses is not abused. Hamilton, supra, 731 P.2d at 870. Indeed our Code of Judicial Conduct, Canon 3A(3), requires that a judge "`be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity . . . .'" James v. City of E. Orange, 246 N.J.Super. 554, 564, 588 A.2d 412 (App.Div.1991) (quoting Canon 3A(3)). "A judge must conduct a trial in a fair and impartial manner, refraining from remarks that might prejudice a party or might influence the minds of the jury." Mercer v. Weyerhaeuser Co., 324 N.J.Super. 290, 297-98, 735 A.2d 576 (App.Div.1999) (citing Cestero v. Ferrara, 110 N.J.Super. 264, 273, 265 A.2d 387 (App.Div.1970), aff'd, 57 N.J. 497, 273 A.2d 761 (1971)). Complete neutrality must be maintained, and the judge has a duty to refrain from making any comment that may be telegraphed or interpreted as judicial disparagement, disbelief or disapproval. See id. at 298, 735 A.2d 576; see also Colucci v. Oppenheim, 326 N.J.Super. 166, 179, 740 A.2d 1101 (App.Div.1999), certif. denied, 163 N.J. 395, 749 A.2d 369 (2000).
"[P]rejudicial [conduct] by a trial judge is properly reviewable by an appellate court considering the entire transcript." Zwillman, supra, 112 N.J.Super. at 20, 270 A.2d 284. Turning to the remarks of the judge in this case, while the cited exchange represents less than the level of judicious decorum appropriate for trial proceedings, we fail to discern any actual harm accruing to defendant "considering the entire transcript." Ibid. As noted, his counsel had the opportunity to make a full and complete defense. The comments of the court may be viewed more as a display of bravura indicative of the judge's firm control of the proceedings than any calculated attempt to telegraph judicial disapproval or disparagement of counsel or counsel's arguments. In other words, the judge reacted to the perceived stimulus of a non-compliant attorney. Although the context in which the exchange took place by no means excuses such behavior, *1217 neither does it suggest bias or partisanship on the part of the judge.
In any event, there was no repetition of this conduct throughout the remainder of the trial. See e.g., State v. Erickson, 610 N.W.2d 335 (Minn.2000) (affirming conviction and holding that trial judge neither repeatedly demeaned defense counsel nor prejudiced the jury, and that the evidence against the defendant was sufficiently strong so that the cumulation of minor errors in the trial did not prejudice the defendant) (emphasis added); State v. Coss, 53 Or. 462, 101 P. 193 (1909) (new trial warranted due to trial judge's expressions of irritation and impatience because of the amount of time in presenting opening and cross-examination, and to numerous critical observations of defense counsel's performance). Indeed, defendant complains of no other instance of judicial excess and we have found none based on our own review of the record. There was no display by the court of a deprecatory or hostile attitude. Following opening statements, trial proceeded without incident and, as noted, no limitations were placed on counsel's summations. We are satisfied that the required atmosphere of impartiality was not lost in this trial or compromised by the brief exchange between court and counsel on opening.
Lest there be any doubt, in charging the jury, the judge cautioned them with respect to his comments and conduct during trial. Specifically, the jury was repeatedly informed of its duty as exclusive fact finder; further cautioned not to be swayed by any comments between the court and counsel; and pointedly instructed that nothing the court has said should be interpreted as having an opinion one way or another on witness credibility or defendant's culpability. The instructions were clearly given and we assume the jury followed them. State v. Curcio, 23 N.J. 521, 527-28, 129 A.2d 871 (1957). We are satisfied that the curative instructions had the desired effect, especially when the totality of the evidence is considered. See State v. O'Connor, 42 N.J. 502, 510-11, 201 A.2d 705 (1964) (affirming murder conviction in part although trial judge severely questioned defendant and exhibited facial expressions of temper, disgust, annoyance, disbelief of the defendant, and amusement because the judge instructed jury to disregard his reactions), cert. denied, 379 U.S. 916, 85 S.Ct. 268, 13 L.Ed.2d 187 (1964); Vergilio, supra, 261 N.J.Super. at 657-58, 619 A.2d 671 (rejecting argument that judge expressed his belief concerning the credibility of witnesses before the jury when smiling during defense witness' testimony because judge issued instruction stating "jury was the ultimate judge" of witness credibility); State v. Johnson, 159 N.J.Super. 26, 28, 386 A.2d 1339 (App.Div.1978) (no reversible error in criminal conviction although trial judge exhibited "expressions of disbelief" as to the defendant's testimony and "highlight[ed]. . . alleged inconsistencies in defendant's testimony[,] implying that [the] testimony was not believable," because jury was instructed that matters of witness credibility was jury's province); State v. Soriano, 107 N.J.Super. 286, 288, 258 A.2d 140 (App. Div.1968), aff'd o.b., 54 N.J. 567, 258 A.2d 361 (1969).
We do not condone the court's comments to counsel during openings in this case. If there was a need to caution counsel against abusing courtroom protocol or rules of procedure, the admonition should have occurred outside the presence of the jury. However, while exceeding the bounds of proper judicial comment, the court's remarks here have not been shown to be sufficiently prejudicial to have denied defendant a fair and impartial trial. Lacking any proof of harm or bias, we are *1218 persuaded defendant's conviction should not be disturbed.
NOTES
[1] In a criminal prosecution, the State is required to open, Rule 1:7-1(a), but the rule is silent as to what constitutes a proper opening. There is no "`bright line' test for the sufficiency of [a prosecutor's] opening...." State v. Portock, 205 N.J.Super. 499, 505, 501 A.2d 551 (App.Div.1985), certif. denied, 105 N.J. 579, 523 A.2d 208 (1986); see State v. Lynch, 79 N.J. 327, 336, 399 A.2d 629 (1979). Instead, we have noted "that the prosecutor's opening should be part of orderly trial procedure provided for the benefit of the jury, not the defendant." Portock, supra, 205 N.J.Super. at 505, 501 A.2d 551. Although Lynch implies that a trial court "may, in [its] discretion, dismiss a case based on [a] prosecutor's opening", the court was "clear[ ] in urging trial judges to resist deciding criminal cases prematurely," id. at 506, 501 A.2d 551, "in view of the double jeopardy factor." Lynch, supra, 79 N.J. at 337, 399 A.2d 629; see also Pressler, Current N.J. Court Rules, comment 1 on R. 1:7-1 (2006).