**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4022-12T1
            A-4055-12T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DERRICK M. MILLER,

     Defendant-Appellant.

_____


STATE OF NEW JERSEY,

     Plaintiff-Respondent

v.

ARTHUR L. THOMPSON, a/k/a NASHEED,

     Defendant-Appellant.

_____


Submitted May 11, 2016 — Decided May 10, 2017

Before Judges Koblitz, Kennedy, and Gilson.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 11-08-1559.

Joseph E. Krakora, Public Defender, attorney for appellants (Susan Remis Silver, Assistant Deputy Public Defender, of counsel and on the briefs for appellant Derrick Miller; Jack L. Weinberg, Designated Counsel, on the briefs for defendant Arthur Thompson).

Carolyn A. Murray, Acting Essex County Prosecutor, attorney for respondent (Maria I. Guerrero, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the briefs).

Appellant Arthur Thompson filed a pro se supplemental brief.

Appellant Derrick Miller filed a pro se supplemental brief.

PER CURIAM

Co-defendants Derrick Miller and Arthur Thompson appeal their convictions and sentences. Defendants were charged with first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2); first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3(a)(1) and (2); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3; first-degree robbery, N.J.S.A. 2C:15-1; second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1; second-degree burglary, N.J.S.A. 2C:18-2(b)(1); second-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2 and N.J.S.A.

2C:18-2(b)(1); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(f); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and fourth-degree aggravated assault with a firearm, N.J.S.A. 2C:12-1(b)(4). Thompson was also charged with one count of second-degree possession of a weapon by a convicted felon, N.J.S.A. 2C:39-7(b). The court dismissed the charges of conspiracy to commit murder and conspiracy to commit burglary. The jury found defendants guilty on all counts, except for the charges against Thompson for attempted murder and aggravated assault.

The court sentenced defendants to life imprisonment on the murder convictions, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Also, the court merged some of the remaining charges into the murder convictions and, on others, imposed sentences that run concurrent to the life sentence. Defendants appealed their convictions and raise fifteen separate issues.

Miller raises the following arguments:

> POINT I
> THE TRIAL COURT ERRED IN NOT SUPPRESSING THE IDENTIFICATION OF DEREK [sic] MILLER BECAUSE THE STATE FAILED TO RECORD THE COMMUNICATIONS BETWEEN THE POLICE AND THE WITNESS AS REQUIRED BY STATE V. DELGADO.

> POINT II
> THE TRIAL COURT IMPROPERLY DENIED SUPPRESSION OF THE OUT-OF-COURT IDENTIFICATION WHICH RESULTED FROM AN UNDULY SUGGESTIVE AND

A-4022-12T1

UNRELIABLE SHOW[-]UP PROCEDURE AND WHICH VIOLATED THE DEFENDANT'S [FOURTEENTH] AMENDMENT RIGHTS.

POINT III
THE TRIAL COURT ERRED IN NOT STRIKING EXPERT TESTIMONY BASED ON HYPOTHETICAL FACTS NOT ADDUCED AT TRIAL AND NOT OFFERED WITH A REASONABLE DEGREE OF CERTAINTY.

POINT IV
THE TRIAL COURT IMPROPERLY DENIED THE MOTION FOR A MISTRIAL BECAUSE THE PROSECUTOR'S SUMMATION CONTAINED FACTS UNSUPPORTED BY THE EVIDENCE WHICH PREJUDICED THE DEFENDANT'S RIGHT TO A FAIR TRIAL. (Partially raised)

POINT V
DEFENDANT'S CONVICTION MUST BE OVERTURNED BECAUSE THE INDICTMENT CHARGED HIM WITH ACTING WITH ONE PERSON, BUT FOR THE FIRST TIME IN SUMMATION, THE PROSECUTION ARGUED THAT DEFENDANT COMMITTED THE CRIME WITH OTHER PARTIES, GIVING DEFENDANT NO OPPORTUNITY TO DEFEND.

POINT VI
AFTER THE JUDGE RECEIVED INFORMATION THAT EXTRANEOUS INFLUENCES MAY HAVE INTERFERED WITH THE JURY'S ABILITY TO REACH AN IMPARTIAL AND FAIR VERDICT, THE TRIAL JUDGE ERRED IN DENYING DEFENDANTS' MOTION FOR A MISTRIAL AND ERRED IN DENYING DEFENDANTS' MOTION, IN THE ALTERNATIVE, THAT ALL JURORS BE POLLED.

POINT VII
THE TRIAL COURT IMPOSED AN EXCESSIVE LIFE SENTENCE WITHOUT PROPERLY WEIGHING THE AGGRAVATING AND MITIGATING FACTORS.

In his pro se brief, Miller raises the following additional points.

A-4022-12T1

POINT I
THE TRIAL JUDGE INCORRECTLY INSTRUCTED THE
JURY ON THE STATE['S] BURDEN OF PROOF ON
ATTEMPTED MURDER, POINTING A FIREARM, AND
BURGLARY. (NOT RAISED BELOW)

POINT II
THE TRIAL JUDGE ERRED IN FAIL[ING] TO CHARGE[]
AGGRAVATED MANSLAUGHTER AS A LESSER-INCLUDED
CHARGE. (NOT RAISED BELOW)

POINT III
THE CUMULATIVE ERRORS COMMITTED IN THE
DEFENDANT'S TRIAL VIOLATED HIS [FOURTEENTH]
AMENDMENT RIGHT TO DUE PROCESS AND A FAIR AND
IMPARTIAL TRIAL.

Thompson raises the following arguments:

POINT I
THE COURT DEPRIVED THE DEFENDANT OF HIS STATE
CONSTITUTIONAL RIGHTS WHEN IT REFUSED TO
SUPPRESS THE IDENTIFICATION OF CO-DEFENDANT
MILLER DUE TO THE STATE'S FAILURE TO COMPLY
WITH THE DOCUMENTATION REQUIREMENTS PURSUANT
TO STATE V. DELGADO [].

POINT II
THE MOTION COURT ERRED WHEN IT DENIED THE WADE
HEARING. THE OUT-OF-COURT IDENTIFICATION
PROCEDURES WERE UNDULY SUGGESTIVE AND
UNRELIABLE IN VIOLATION OF THE DEFENDANT'S
FOURTEENTH AMENDMENT DUE PROCESS RIGHTS.

POINT III
THE TRIAL COURT ABUSED ITS DISCRETION IN
DENYING THE DEFENDANT'S MOTION FOR SEVERANCE.

POINT IV
THE STATE DEPRIVED THE DEFENDANT DUE PROCESS
OF LAW AND A FAIR TRIAL WHEN IT CHANGED ITS
THEORY OF THE CASE IN SUMMATION. THE
PROSECUTOR'S ACTIONS CONSTITUTED
PROSECUTORIAL MISCONDUCT. FUNDAMENTAL
FAIRNESS DEMANDS THAT THIS COURT REVERSE THE

A-4022-12T1

DEFENDANT'S CONVICTIONS AND REMAND FOR A NEW TRIAL.

POINT V
THE STATE'S MISUSE OF THE EXPERT TESTIMONY THROUGHOUT THE TRIAL CONSTITUTED PROSECUTORIAL MISCONDUCT DEPRIVING THE DEFENDANT OF A FAIR TRIAL. (Partially Raised Below)

    A — The Gunshot Residue Expert

    B — The Soil Expert

    C — Use of Forensic Scientist Gainsborg as both lay opinion and expert witness.

POINT VI
THE PROSECUTOR'S COMMENTS DURING SUMMATION CONSTITUTED PROSECUTORIAL MISCONDUCT DEPRIVING THE DEFENDANT OF A FAIR TRIAL. THE COURT ERRED IN NOT GRANTING DEFENDANTS' MOTION FOR A MISTRIAL. THE CURATIVE INSTRUCTIONS GIVEN ON TWO OF THE MOST EGREGIOUS COMMENTS DID NOT ADEQUATELY REMEDY THE HIGHLY INFLAMMATORY AND PREJUDICIAL COMMENTS MADE BY THE PROSECUTOR.

    A — The Blood Evidence Shouting from the Grave

    B — The Boot Print Impression Size

    C — Comments on Evidence Not Adduced at the Trial

POINT VII
THE COURT ERRED WHEN IT FAILED TO SUA SPONTE CHARGE THE LESSER INCLUDED OFFENSES OF AGGRAVATED MANSLAUGHTER AND RECKLESS MANSLAUGHTER. (Not Raised Below)

POINT VIII
THE COURT IMPOSED AN EXCESSIVE SENTENCE WHICH
DID NOT TAKE INTO CONSIDERATION ALL
APPROPRIATE CODE SENTENCING PROVISIONS.

Thompson raises the following additional points.

POINT I
THE COURT ERRED WHEN IT DENIED THE DEFENDANT'S
MOTIONS FOR JUDGMENT OF ACQUITTAL AND THEN
WHEN IT DENIED THE DEFENDANT'S MOTION FOR A
NEW TRIAL.

POINT II
THE COURT ERRED WHEN IT DENIED THE DEFENDANT'S
PRO SE MOTIONS TO DISMISS THE INDICTMENT AS
IT IS PREMISED UPON INACCURATE INFORMATION AND
ADMITTEDLY FALSE TESTIMONY.

POINT III
THE COURT SHOULD HAVE GRANTED THE DEFENDANT'S
MOTIONS TO EXCLUDE THE TESTIMONY OF THOMASINA
PAIGE FOR THE PROSECUTOR'S FAILURE TO PROVIDE
DETAILED SUMMARIES OF THE INTERVIEWS THAT THEY
HAD WITH THE WITNESS IN PREPARATION FOR TRIAL.

POINT IV
THE COURT ERRED IN DENYING THE MOTION FOR
MISTRIAL BASED ON THE IMPACT OF SUPERSTORM
SANDY ON THE COURSE OF THE TRIAL.  IN THE
ALTERNATIVE, THE COURT ERRED IN FAILING TO
INQUIRE OF ALL OF THE JURORS WHETHER AND HOW
THE STORM WAS IMPACTING THEM AND THEIR ABILITY
TO RENDER A FAIR AND IMPARTIAL VERDICT.

In a supplemental letter brief, Thompson raises the following

additional point:

POINT IX
THE RECENT PUBLISHED APPELLATE DIVISION
DECISION IN STATE V. VICTOR GONZALEZ, []
MANDATES REVERSAL OF THE DEFENDANT'S
CONVICTIONS FOR THE SAME REASONS EXPRESSED IN
THAT CASE: THE REPEATED US[E] OF "AND/OR"

7                                    A-4022-12T1

LANGUAGE IN THE ACCOMPLICE LIABILITY JURY
INSTRUCTION AND IN THE CONSPIRACY INSTRUCTION
AS WELL AS THE FELONY MURDER INSTRUCTION COULD
HAVE EASILY LED TO AN IMPROPER VERDICT FROM
IMPROPER JURY DELIBERATIONS. (Partially
Raised Below)

After careful consideration of the arguments in light of the facts and the law, we affirm.[1]

I.

Defendants' convictions arose out of a home invasion and murder that occurred on January 18, 2010, at a residence in Irvington, New Jersey. The evidence at trial established that the home was a two-family house where an adult brother and sister lived with their respective families. The sister, M.B.[2], lived on the first floor with her son, J.B., her daughter, and her boyfriend, the victim, A.H. The brother, D.B., lived on the second floor with his daughter, K.B., and his granddaughter.

In the late evening on January 18, 2010, M.B. heard a banging noise and gunshots. She locked herself in the bathroom and called 911. K.B. was doing homework in her living room on the second floor and she heard what sounded like glass shattering. She went downstairs and saw A.H. on his knees with two men standing on

_____

[1] We have consolidated these appeals for the purposes of this opinion.
[2] We use initials to protect the privacy interest of the victims and witnesses.

either side of him. One of the men had A.H. in a headlock and another man was pointing a gun at A.H. One of the men saw K.B. and pointed the gun at her, prompting her to retreat upstairs.

J.B. was in his downstairs bedroom when he first heard a banging noise. He then went to his door and saw a man hop over the counter into the kitchen area. He could not see the man's face, but he saw a gun in the man's hand. J.B. closed his bedroom door and heard a gunshot and then heard three more gunshots. He escaped by climbing out the window.

D.B. was upstairs in bed when he heard a scuffle erupt in the downstairs apartment. Upon going downstairs, D.B. saw two individuals in the home, one wearing a "netted mask" and pointing a gun at A.H. and another holding A.H. by the neck. The man pointed the gun at D.B. and told him to "get the fuck out of there." D.B. thereafter heard a gunshot and ran outside. As he hid behind bushes, he heard more gunfire and saw two men get into a car and drive away. Prior to their departure, D.B. was able to see the face of one of the assailants.

Almost immediately, the police responded to the home. D.B. pointed in the direction of the car and exclaimed to the police that "the car is right there[,]" and "that's them, that's them." The responding police officer testified that he followed the car and pulled it over several blocks from the home. The males in the

A-4022-12T1

vehicle were later identified as Miller and Thompson. Thompson was arrested on an outstanding warrant at the scene. Miller stayed with the vehicle.

Shortly after pulling the car over, the police brought D.B. to the scene. When D.B. arrived, Miller was standing by the car in handcuffs. D.B. voluntarily identified Miller to the police, saying "[t]hat's him." D.B. initially said he identified Miller by his clothing, but then retracted this statement and testified that he did not tell the police at the time that he could identify Miller by his face because he feared for his family's safety. The detectives who escorted D.B. to the scene testified that neither of them said anything to D.B. during the ride over, and that D.B. made his statement voluntarily. One of the detectives prepared a report memorializing the positive identification, but failed to include the words D.B. used.

Back at the home, the police found A.H. lying dead on the basement floor, having been shot three times. The police conducted a series of follow-up investigations and tests involving DNA sampling, soil sampling, gunshot residue, and blood splattering.

Prior to trial, the defendants moved to suppress the out-of-court identification by D.B. Thompson also moved to dismiss the

indictment and sever the trials.  After conducting a <u>Wade</u>[3] hearing and taking testimony, the court denied the defendants' motions. As to the motion to suppress, the court found that the show-up, although "inherently suggestive," was neither "necessarily impermissibly suggestive nor . . . necessarily subvert[ed] the reliability of the identification."  The defendants failed to "show a scintilla of probative evidence relating to [suggestiveness] that would undermine the identification."

Thereafter, the court held a twelve-day jury trial.  Among other evidence, the State proffered numerous witnesses and expert opinions, including a forensic scientist specializing in serology (the study of blood serum) and a forensic scientist specializing in DNA analysis.  The serology expert found traces of blood on Miller's white thermal shirt and dark blue-gray pants.  The State's forensic scientist analyzed the DNA samples from this clothing and concluded the blood on the clothing was that of the victim, A.H.

As we noted earlier, following the jury's verdict, the court sentenced both Miller and Thompson to life imprisonment subject to NERA.  Specifically, Miller received life imprisonment with thirty years parole ineligibility on the first degree murder count, subject to NERA; fifteen years for armed robbery with five years

---

[3] <u>United States v. Wade</u>, 388 <u>U.S.</u> 218, 87 <u>S. Ct.</u> 1926, 18 <u>L. Ed.</u> 2d 1149 (1967).

parole ineligibility, subject to NERA; twenty years for attempted murder, with ten years parole ineligibility, subject to NERA; eighteen months for aggravated assault; and ten years for unlawful possession of a weapon, with five years parole ineligibility. All counts were to run concurrent with the murder count. The court merged the felony murder, conspiracy to murder and possession of a firearm for an unlawful purpose counts into the murder conviction, and the burglary count into the felony murder conviction.

Thompson received life imprisonment with thirty years parole ineligibility on the murder conviction, subject to NERA; fifteen years for armed robbery with five years parole supervision, subject to NERA; and ten years for unlawful possession of a weapon, with five years parole ineligibility. The felony murder, conspiracy to commit murder and possession of a weapon for an unlawful purpose convictions were merged into the murder conviction, and the burglary conviction merged into felony murder. All counts were to run concurrent with the first degree murder conviction.

Defendants appealed.

## II.

We turn first to the defendants' contention that the court erred by denying the motion to suppress the out-of-court identification by D.B. Defendants argue that this identification

should have been suppressed because the police failed to record the communications between the officers and D.B., and because the show-up was unduly suggestive. We disagree.

When reviewing a motion to bar an out-of-court identification, we focus on whether the findings could reasonably have been reached on sufficient credible evidence in the record. State v. Adams, 194 N.J. 186, 203 (2008). These findings "are entitled to considerable weight." Ibid. (quoting State v. Farrow, 61 N.J. 434, 451 (1972)). We give deference to the findings that "are substantially influenced by [the motion judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case[.]" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

"The admission of an unreliable out-of-court identification, which resulted from impermissibly suggestive procedures[,]" is a due process violation. State v. Smith, 436 N.J. Super. 556, 564 (App. Div. 2014). At the time of defendants' trial, New Jersey followed the two-part standard articulated in Manson v. Brathwaite, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977), and adopted by our Supreme Court in State v. Madison, 109 N.J. 223 (1988). First, a court must decide whether the identification procedure used was impermissibly suggestive. Manson, supra, 432 U.S. at 114, 97 S. Ct. at 2253, 53 L. Ed. 2d at 154; Madison,

supra, 109 N.J. at 232. If the procedure was impermissibly suggestive, the court "must then decide whether the objectionable procedure resulted in a 'very substantial likelihood of irreparable misidentification.'" Madison, supra, 109 N.J. at 232 (quoting Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247, 1253 (1968)). In other words, "whether the impermissibly suggestive procedure was nevertheless reliable by considering the totality of the circumstances and weighing the suggestive nature of the identification against the reliability of the identification." Adams, supra, 194 N.J. at 203 (quoting State v. Romero, 191 N.J. 59, 76 (2007)).

"Reliability is the linchpin." Madison, supra, 109 N.J. at 232 (quoting Manson, supra, 432 U.S. at 114, 97 S. Ct. at 2253, 53 L. Ed. 2d at 154). An identification that is reliable may be admissible despite an impermissibly suggestive nature. Ibid. In assessing reliability, courts consider the opportunity of the witness to view the accused at the time of the crime, the witness's degree of attention at the time, the accuracy of a prior description of the accused, the witness's level of certainty at the time of the confrontation, and the time between the incident and the confrontation. Id. at 239-40. These factors are weighed against the corrupting effect of the suggestive identification. Id. at 240.

Defendants argue that the identification should have been suppressed since the State failed to produce any recordings of the communications between the police and D.B. Defendants claim that this failure violated the holding in State v. Delgado, 188 N.J. 48 (2006). In Delgado, the Court "require[d], as a condition to the admissibility of out-of-court identifications, that the police record, to the extent feasible, the dialogue between the witnesses and police during an identification procedure." Id. at 51. Police must "make a written record detailing the out-of-court identification procedure, including the place where the procedure was conducted, the dialogue between the witness and the interlocutor, and the results." Id. at 63. This language served as the basis for Rule 3:11. Notwithstanding this requirement, the lack of such important details may not result in a new trial. Subsection (d) of Rule 3:11 provides for other remedies in the event that the record is lacking for a detailed account of an out-of-court identification procedure. R. 3:11(d).

Here, it is undisputed that the police failed to maintain a written record of the exchange with D.B. or even a detailed summary. The record only contains an incident report that notes D.B. identified Miller. However, the testimony provided at the Wade hearing was sufficient to overcome the lack of a written record. The certainty in D.B.'s statements and corroboration from

another witness provided the basis for the motion judge to find that the procedures used were not impermissibly suggestive and that the lack of the recording did not undercut the reliability of the out-of-court identification.

Moreover, at trial, the State presented evidence linking defendants to the crime. D.B. testified that he saw defendants in the house, saw Miller outside the house, and pointed the first responding police unit in the direction of the car that left the scene. Very soon thereafter, D.B. identified Miller standing by that car. In addition, the State's experts testified that the same clothes Miller wore when leaving the scene contained blood samples with the victim's DNA. The State's evidence further buttressed D.B.'s already-reliable out-of-court identification. We discern no basis warranting reversal.

### III.

We have considered defendants' other contentions in light of the record and applicable legal principles and conclude that almost all are without sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(2). We add only the following comments.

Defendants argue that the trial court erred by failing to charge the jury sua sponte with the lesser included offenses to murder of aggravated and reckless manslaughter. At the jury charge

16

conference, defendants did not request a charge on aggravated manslaughter and failed to object to the jury charge on the omission of the aggravated manslaughter charge.

We review this omission for plain error. See R. 1:7-2; R. 2:10-2. "Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result[.]" R. 2:10-2. The inquiry is whether the omitted charge was clearly capable of producing an unjust result, or whether there is a reasonable doubt that the jury would have reached a different verdict had the charge been given. Since defendants did not request the charge or object to its omission, the trial court was only required to provide the charge "when the facts adduced at trial clearly indicate[d] that a jury could convict on the lesser while acquitting on the greater offense." State v. Jenkins, 178 N.J. 347, 361 (2004).

Furthermore, "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting defendant of the included offense." N.J.S.A. 2C:1-8(e). The charge is not appropriate if it "would invite the jury to engage in sheer speculation[.]" State v. Darrian, 255 N.J. Super. 435, 446 (App. Div.) (citation omitted), certif. denied, 127 N.J. 560 (1992); see also State v. Brent, 137 N.J. 107, 118 (1994).

Aggravated and reckless manslaughter are lesser included offenses to murder that are charged only when warranted. State v. Ramsey, 415 N.J. Super. 257, 263-64 (App. Div. 2010), certif. denied, 205 N.J. 77 (2011). Criminal homicide constitutes aggravated manslaughter under N.J.S.A. 2C:11-4(a)(1) when "[t]he actor recklessly causes death under circumstances manifesting extreme indifference to human life[.]" Criminal homicide constitutes reckless manslaughter under N.J.S.A. 2C:11-4(b)(1) when "[i]t is committed recklessly[.]" An actor is reckless "when he [or she] consciously disregards a substantial and unjustifiable risk that" causes, in this instance, death. N.J.S.A. 2C:2-2(b)(3).

The trial judge commented that he did not "see any lesser included offenses" and that any lesser included offenses did not fit the facts of the case. We defer to this reasoning. Defendants failed to make an objection, and there is no evidence in the record to part from the inference that defendants intended to kill A.H. For instance, the record does not establish that either defendant knew A.H. prior to the shooting, or that the gun shots occurred during a struggle. As such, we discern no plain error or prejudice warranting reversal.

Miller further argues that the court improperly instructed the jury on the crimes of attempted murder, aggravated assault, and burglary. This argument is without merit. The court

instructed the jury on these crimes with near verbatim recitations of the Model Jury Charges.  See Model Jury Charge (Criminal), N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a) "Attempted Murder" (2011); Model Jury Charge (Criminal), N.J.S.A. 2C:12-1(b)(4) "Aggravated Assault" (2011); Model Jury Charge (Criminal), N.J.S.A. 2C:18-2(b) "Burglary" (2011).

Defendants also contend that the State committed prosecutorial misconduct during the summation by mischaracterizing evidence and making several inflammatory statements.  Defendants argue these instances constituted reversible error and should have resulted in a mistrial.  We do not agree.

A prosecutor is limited in summation to commenting upon the evidence and the reasonable inferences to be drawn therefrom. State v. Feaster, 156 N.J. 1, 58-59 (1998).  However, a prosecutor has considerable leeway in presenting a summation.  State v. Munoz, 340 N.J. Super. 204, 217 (App. Div.), certif. denied, 169 N.J. 610 (2001).  Thus, prosecutors may vigorously and forcefully present their closing argument.  State v. Nelson, 173 N.J. 417, 460 (2002). Prosecutorial misconduct in summation "will not serve as the basis for reversal unless it was so egregious as to work a deprivation of a defendant's right to a fair trial."  Feaster, supra, 156 N.J. at 59.

Here, none of the instances highlighted by defendants were

so egregious so as to deprive them of their right to a fair trial. The prosecutor either summarized prior evidence or provided fair commentary and inferences deduced from the totality of the evidence. In the rare instances at which the court sustained defendants' objections, see, e.g., State v. Tilghman, 385 N.J. Super. 45, 52-53 (App. Div.), certif. granted limited to sentence and summarily remanded, 188 N.J. 269 (2006), the jury received curative instructions. Neither defendant made an objection, and we do not now find any plain error. State v. Bragg, 295 N.J. Super. 459, 468 (App. Div. 1996) (citing to R. 1:7-2; R. 2:10-2).

Such a curative instruction occurred as a result of defendants' motion for a mistrial. "Whether an event at trial justifies a mistrial is a decision 'entrusted to the sound discretion of the trial court.'" State v. Smith, 224 N.J. 36, 47 (2016) (quoting State v. Harvey, 151 N.J. 117, 205 (1997), cert. denied, 528 U.S. 1085, 120 S. Ct. 811, 145 L. Ed. 2d 683 (2000)). Appellate courts "will not disturb the trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results in a manifest injustice." Ibid. (quoting State v. Jackson, 211 N.J. 394, 407 (2012)). Alternative courses of action, including a curative instruction, constitute "viable alternative[s] to a mistrial, depending on the facts of the case." Ibid.; see State v. Winter, 96 N.J. 640, 646-47 (1984). Here, the court provided

20

the curative instruction to the jury. This instruction is an acceptable alternative to granting a mistrial. And again, neither defendant objected. Furthermore, the court's instruction made clear to the jury that it should disregard the remark, even though the instruction did not expressly say as much.

Finally, defendants contend that their sentences were excessive as the court failed to properly weigh the aggravating and mitigating factors. Appellate review of a defendant's sentence is deferential, unless the sentencing court fails to follow the Code of Criminal Justice and basic principles of sentencing discretion. State v. Case, 220 N.J. 49, 65 (2014). The deferential standard will prevail if the sentencing court identifies and properly balances the supported aggravating and mitigating factors, and the result "does not shock the judicial conscience." Ibid. (quoting State v. Roth, 95 N.J. 365 (1984)). Here, both defendants received life sentences, with approximately sixty-three years of parole ineligibility. Though the court did not find any applicable mitigating factors for either defendant, it appropriately explained how it arrived at the decision. As such, we affirm the sentences imposed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4022-12T1